UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------- X
                                        :
AMERICAN TECHNICAL CERAMICS CORP.       :
and AVX CORPORATION,                    :
                                        :
            *Plaintiffs*,               :       **MEMORANDUM & ORDER**
                                        :
    -against-                           :       14-CV-6544(KAM)(GRB)
                                        :
PRESIDIO COMPONENTS, INC.,              :
                                        :
            *Defendant*.                :
                                        X
---------------------------------------

**MATSUMOTO, United States District Judge:**

          Plaintiffs American Technical Ceramics Corporation

("ATC") and AVX Corporation (collectively, "plaintiffs")

commenced this action on November 6, 2014, against defendant

Presidio Components, Inc. ("Presidio" or "defendant"), alleging

infringement by Presidio of the following ATC patents:  United

States Patent No. 6,144,547 ("the '547 Patent"), United States

Patent No. 6,337,791 ("the '791 Patent," and together with the

'547 Patent, the "patents-in-suit"), and United States Patent

No. 6,992,879 ("the '879 Patent").  (ECF No. 1, Compl.)

Plaintiffs seek a determination that Presidio willfully

infringed the patents-in-suit, and injunctive relief prohibiting

Presidio from engaging in further infringement.[1]  Plaintiffs also

---------------

[1]    Plaintiffs declined to proceed with their action as to all claims of
the '879 Patent which were cancelled by the U.S. Patent and Trademark Office.

1

seek damages from the alleged infringement, including attorneys' fees and costs.

Presently before the court are the parties' respective motions *in limine* seeking various evidentiary rulings in advance of trial. (*See* ECF No. 164-1, Pls.' Mem. Supp. Mot. Lim. ("Pls.' MIL"); ECF No. 165, Def.'s Opp'n Pls.' Mot. Lim. ("Def.'s Opp."); ECF No. 166, Pls.' Reply; ECF No. 169, Def.'s Mot. Lim. ("Def.'s MIL"); ECF No. 170, Pls.' Opp'n Def.'s Mot. Lim. ("Pls.' Opp."); ECF No. 171, Def.'s Reply.) The court addresses plaintiffs' motions first, followed by defendant's motions. The court also rules in this Order on various objections made by the parties to the remaining exhibits listed on the parties' pre-trial exhibits lists, (*see* ECF Nos. 174-75), but not covered by the court's decisions on motions *in limine*.[2]

_____

(ECF No. 126, Mem. & Order on Cross-Motions for Summ. J. ("Summ. J. Order"); *see also* ECF No. 116-2, Pl. Summ. J. Mot. 2 n.1.) Also, plaintiffs only seek injunctive relief as to the '791 Patent. (*See* ECF No. 157, Jt. Proposed Pretrial Order 3.)

[2] On March 1, 2019, pursuant to the court's pre-trial scheduling order, the parties filed a proposed Joint Pre-Trial Order that included, among other things, a list of each parties' offered exhibits, and a corresponding lengthy list of the opposing party's objections. (*See* ECF No. 157.) This submission, from both parties, was entirely unacceptable as it included literally hundreds of objections to exhibits not submitted for the court's review, and with limited legal justification. (*See* Docket Order dated April 5, 2019.) As such, the court ordered the parties to meet, confer, and revise their respective exhibits lists and resolve the bulk, if not all, of their evidentiary disputes before submitting revised lists setting forth their remaining objections with a paragraph explanation setting forth the basis for their objection. (*Id.*) Accordingly, the parties filed their revised lists, (ECF Nos. 174-75), and clarified one further issue in response to a court order, (ECF No. 177). The parties' revised submissions were very useful in distilling the essential evidentiary disputes between the parties and preparing for an efficient and effective trial of the disputed issues in this matter.

The court assumes familiarity with the procedural and factual history of this case, as set forth most recently in the court's Memorandum and Order deciding the parties' respective expert evidentiary issues pursuant to *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). (*See* ECF No. 179, Mem. & Order on *Daubert* Mots. ("Daubert Order").)

## LEGAL STANDARD

"The purpose of an *in limine* motion is 'to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial.'" *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). "Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." *United States v. Paredes*, 176 F. Supp. 2d 179, 181 (S.D.N.Y. 2001). Further, a district court's ruling on a motion *in limine* is preliminary and "subject to change when the case unfolds." *Luce v. United States*, 469 U.S. 38, 41 (1984).

The admissibility of evidence at trial is governed by the Federal Rules of Evidence. Federal Rule of Evidence ("FRE" or "Rule") 402 provides that all relevant evidence is admissible except as otherwise provided by the Constitution, Act of Congress, or applicable rule. Fed. R. Evid. 402. Rule 401 defines relevant evidence as that which "has any tendency to

make a fact more or less probable than it would be without the evidence," so long as "the fact is of consequence in determining the action." Fed. R. Evid. 401. The Second Circuit has characterized the relevance threshold as "very low." *See United States v. White*, 692 F.3d 235, 246 (2d Cir. 2012) (quoting *United States v. Al-Moayad*, 545 F.3d 139, 176 (2d Cir. 2008)). To be relevant, evidence need not prove a fact in issue by itself, but only have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *McKoy v. North Carolina*, 494 U.S. 433, 440 (1990) (quoting *New Jersey v. T.L.O.*, 469 U.S. 325, 345 (1985)).

Applicable Law

In this patent case the court applies the law of the Federal Circuit to patent issues, and the law of its regional circuit, the Second Circuit, to non-patent and evidentiary issues. *In re Cambridge Biotech Corp.*, 186 F.3d 1356, 1368 (Fed. Cir. 1999); *see also Coconut Grove Pads, Inc. v. Mich & Mich TGR, Inc.*, 222 F. Supp. 3d 222, 250 n.6 (E.D.N.Y. 2016). Thus, questions regarding what is relevant to a lost profits determination, for example, are governed by Federal Circuit law, while questions generally pertaining to evidentiary issues, estoppel, or preclusion, are governed by Second Circuit law.

<u>Federal Rule of Evidence 403</u>

In addition to the relevance of the evidence that the parties seek to offer or exclude in their motions, several other Federal Rules of Evidence (the "Rules") bear on the court's determination of admissibility.  Evidence that is otherwise admissible under the Rules is generally subject to the probative-prejudice balancing analysis provided in Rule 403.  Rule 403 permits the exclusion of relevant evidence, "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury."  Fed. R. Evid. 403.  District courts wield broad discretion in making decisions under this probative-prejudice balancing test.  *See Fiacco v. City of Rensselaer*, 783 F.2d 319, 327-28 (2d Cir. 1986); *see also United States v. Abu-Jihaad*, 630 F.3d 102, 131 (2d Cir. 2010) ("We review a district court's evidentiary rulings deferentially, mindful of its superior position to assess relevancy and to weigh the probative value of evidence against its potential for unfair prejudice.").  "In making a Rule 403 determination, courts should ask whether the evidence's proper value 'is more than matched by [the possibility] . . . that it will divert the jury from the facts which should control their verdict.'"  *Bensen v. Am. Ultramar Ltd.*, No. 92-CV-4420, 1996 WL 422262, at *6 (S.D.N.Y. July 29, 1996) (quoting *United States v. Krulewitch*, 145 F.2d 76, 80 (2d

Cir. 1944)).  The court applies the foregoing analysis to the parties' pending motions and objections.

## DISCUSSION

In the instant motions, plaintiffs move to preclude defendant Presidio from: (1) referencing other litigations between the parties; (2) referencing the parties' *inter partes* review ("IPR") before the U.S. Patent and Trademark Office's ("USPTO") Patent Trial and Appeal Board ("PTAB"); (3) referencing proceedings before the USPTO involving patents other than the patents-in-suit; (4) referencing patent claims that have been dismissed from this case, namely the '879 Patent in its entirety, and claim 1 of the '791 Patent; (5) referencing the size and wealth of the parties; (6) relying on capacitors that defendant has never produced; (7) offering evidence and testimony concerning defendant's equitable defense of waiver of the '791 Patent; and (8) offering evidence and testimony that the market for high-performance broadband capacitors was not a two-supplier market.  (Pls.' MIL 1.)

Defendant variously opposes plaintiffs' motions but concedes as to some as discussed below.  Additionally, defendant moves to preclude plaintiffs from: (1) offering evidence or argument relating to the PTAB's IPR decisions; (2) offering evidence relating to the issues tried by the court, specifically plaintiffs' request for a permanent injunction, enhanced

damages, and attorneys' fees; (3) offering evidence or argument concerning a patent's presumption of validity; (4) offering evidence or argument concerning plaintiffs' alleged notice of infringement to defendant prior to filing this lawsuit; (5) offering evidence or argument related to plaintiffs' allegations of copying of the patents-in-suit; (6) offering evidence or argument concerning any alleged willful infringement by Presidio prior to May 6, 2002; (7) offering evidence or argument concerning any alleged willful infringement conduct by Presidio after this action commenced; (8) offering evidence or argument that plaintiffs' 500, 545L, and 550 capacitors are covered by their own patents; (9) offering expert testimony not disclosed in an expert report; (10) offering evidence or argument concerning irrelevant testing by Dr. Hillman, plaintiffs' technical expert; and (11) offering evidence or argument concerning the relevant market based on irrelevant patents. (*See* Def.'s MIL.)  Plaintiffs similarly oppose defendant's motions but concede as to some as outlined below.

## PLAINTIFFS' MOTIONS *IN LIMINE*

### I.   Other Litigations Between the Parties

Plaintiffs move to preclude defendant from referring to two prior litigations between the parties in the Southern District of California, *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, No. 08-cv-0335 (S.D. Cal. 2008) ("*Presidio I*")

and *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, No. 14-cv-2061 (S.D. Cal. 2014) ("*Presidio II*") concerning U.S. Patent No. 6,816,356 ("the '356 Patent"). (Pls.' MIL 3.) Defendant concedes that the litigations involve a different patent and different technology and arguments concerning the same should be precluded. (Def.'s Opp. 1.) However, as discussed in the court's order disposing of the parties' *Daubert* motions, plaintiffs previously challenged defendant's reliance on lost profits judgments issued in both cases as irrelevant to a lost profits determination in this case. (*See* Daubert Order 29-30.) The court has already ruled on this issue for the reasons discussed in its previous order. Thus, defendant's arguments in opposing this motion *in limine* are moot and plaintiffs' first motion *in limine* is GRANTED. Neither party shall make any reference to the parties' other litigations.

## II. *Inter Partes* Review

Plaintiffs next move for the court to preclude reference to, or evidence, testimony, or argument regarding, the IPR proceedings concerning the patents-in-suit and the now-cancelled '879 Patent. (Pls.' MIL 7.) Plaintiffs argue any such evidence is irrelevant to the issues in this trial and risks misleading the jury because of the different legal standards employed during IPR pertaining to claim construction and burdens of proof. (*Id.*) Defendant responds that

8

plaintiffs overreach because their motion would exclude relevant evidence. (Def.'s Opp. 5.) That is, defendant argues IPR proceedings comprise the file history of a patent, and that a patentee cannot argue one way in support of patentability while making contradictory arguments during an infringement action of the same patent. (*Id.*)

Plaintiffs first argue that IPRs entail different legal standards that render the admitted evidence, analysis, and conclusions irrelevant to a patent infringement case. (Pls.' MIL 7.) For example, plaintiffs note, the PTAB and district courts construe claim terms and consider patent validity using different standards. (*Id.* at 7-8.) Plaintiffs further argue that even if the underlying evidence or arguments presented during IPR are deemed relevant, the disparate legal standards would only serve to confuse the jury. (*Id.* at 8.) Plaintiffs support this argument by citing to a number of non-binding decisions where the trial court excluded reference to IPR proceedings under FRE 403. (*Id.*)

Defendant responds that plaintiffs' motion is overbroad and that the court should only preclude the final decisions reached by the PTAB during IPR. (Def.'s Opp. 5.) Defendant relies on *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1362 (Fed. Cir. 2017), for the proposition that statements made by a patentee during IPR may be relied upon before the

district court to support a finding of disclaimer.  (*Id.*)  In
further support, defendant cites to two non-binding cases where
the district court declined to ban wholesale evidence and
argument presented at a related IPR proceeding, and
distinguishes plaintiffs' cited authority.  (*Id.* at 6.)

Defendant's argument for admission focuses on the
unfairness of permitting plaintiffs to make certain arguments
before the PTAB at IPR and contradictory arguments before this
court.  In *Aylus Networks*, defendant's most apt case, the
Federal Circuit held that a patentee's statements made during
IPR could form the basis of a prosecution disclaimer argument
during claim construction before the district court.  *Aylus
Networks*, 856 F.3d at 1360-61.  Plaintiffs respond that the
holding in *Aylus Networks* permits consideration of statements
made at IPR for the limited purpose of prosecution disclaimer
during claim construction hearings in the district court, but
not at trial.  (Pls.' Reply 3.)  Moreover, plaintiffs argue,
Presidio mischaracterized the various court's respective
decisions regarding evidence from reexamination proceedings.
(*Id.* at 4.)

It is well within the court's discretion to admit or
preclude under FRE 403 evidence relating to IPR proceedings.
*See Callaway Golf Co. v. Acushnet Co.*, 576 F.3d 1331, 1343 (Fed.
Cir. 2009) ("The district court did not abuse its discretion in

concluding that the prejudicial nature of evidence concerning the ongoing parallel reexamination proceeding outweighed whatever marginal probative or corrective value it might have had in this case."). *Aylus Networks* is not to the contrary—that case plainly considered claim construction and the doctrine of prosecution disclaimer, not the broader admissibility of evidence stemming from IPR in general. The Federal Circuit has explained that prosecution disclaimer "precludes patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution." *Aylus Networks*, 856 F.3d at 1359. But defendant does not explain why prosecution disclaimer is an issue for trial, and the court has already construed the disputed claim terms in this case. Defendant's attempt to distinguish certain of plaintiffs' cited cases as "outdated" due to the intervening decision in *Aylus Networks* is thus unavailing.

Given the absence of direct authority, the court will be guided by the balancing test of FRE 403. Defendant has failed to specify what IPR evidence it will seek to present. Without defendant's specification in its opposition of the IPR evidence it seeks to admit, defendant has failed to show that evidence presented at IPR will be relevant to an issue in this trial and, moreover, that such evidence, if relevant, will not be substantially outweighed by the risk of confusing the jury.

Moreover, the court will not permit defendant to revisit the scope of the claim terms before the jury as the court has already construed the necessary claim terms.

Thus, plaintiffs' motion is GRANTED. Neither party may offer evidence of the decisions rendered by the PTAB in the IPR related to the patents-in-suit. To the extent defendant argues that plaintiffs should be estopped from taking positions in other proceedings that are contrary to those it would take at trial, it argues for an application of the judicial estoppel doctrine but does not apply the proper standard as discussed below in addressing plaintiffs' eighth motion *in limine*.

## III. USPTO Proceedings Involving Other Patents

Plaintiffs next move the court to preclude any reference to, or evidence, testimony and arguments from, any USPTO proceedings concerning patents that are not at issue in this case. (Pls.' MIL 9-10.) Defendant does not oppose this motion. (Def.'s Opp. 8.) Plaintiffs' motion is hereby GRANTED. Neither party shall make reference at trial or offer evidence or attorney argument concerning proceedings before the USPTO relating to patents unrelated to this case.

## IV. Patent Claims No Longer in Case

Plaintiffs next move the court to preclude any reference to the '879 Patent or to claim 1 of the '791 Patent. (Pls.' MIL 10.) In support plaintiffs argue that the dismissed

12

patent claims bear no relevance to the infringement and invalidity issues to be tried to the jury in this case, and that any probative value is substantially outweighed by a risk of confusing the issues and misleading the jury. (*Id.*) Defendant responds that such motion is overbroad and that, in connection with its opposition to plaintiffs' second motion *in limine*, defendant should be permitted to refer to plaintiffs' past patentability arguments that are inconsistent with arguments plaintiffs will make at trial to demonstrate infringement or validity. (Def.'s Opp. 9.)

Defendant has not explained, and the court does not understand, how evidence stemming from IPR of the '879 Patent or claim 1 of the '791 Patent would be relevant to the issues to be tried by the jury. Thus, plaintiffs' motion is GRANTED.

## V.  Size and Wealth of the Parties

Plaintiffs next move the court to preclude Presidio from referring to or offering evidence of the size and wealth of the parties, and specifically from "characterizing th[e] dispute as a battle between David and Goliath." (Pls.' MIL 11.) Defendant responds that plaintiffs' motion is "impermissibly vague" and that plaintiffs' own expert refers to the parties' respective size and wealth in opining on damages. (Def.'s Opp. 10.) Plaintiffs dispute that their request would preclude reference to sales and revenue data of the accused products or

plaintiffs' competing products. (Pls.' Reply 5.) Plaintiffs explain that reference to the "but-for" world to determine lost profits damages would not require any mention that plaintiff AVX is a "large publicly-traded company" or that Presidio is a "small family-owned business." (*Id.*)

Plaintiffs argue that evidence of a party's net worth creates the potential for jurors to use their verdict to express biases against big business, citing to the United States Supreme Court case *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003). (Pls.' MIL 11.) Plaintiffs also point out that AVX, and its parent corporation, Kyocera Electronics Corporation, are large, publicly-traded companies that could be perceived "unfavorably or as bullies" when compared to "small, family-owned" Presidio. (*Id.*) In support of their arguments, plaintiffs cite to a number of non-binding cases in which various district courts excluded evidence of the parties' relative wealth under FRE 401 and FRE 403. (*Id.* at 12-13.)

Defendant responds that production and financial information germane to patent infringement cases necessarily illuminates the size and wealth of the parties. (Def.'s Opp. 10.) Moreover, defendant argues, plaintiffs' damages expert relied on and disclosed information regarding the size and wealth of the parties including sales and revenue data for the accused products; a comparison of the parties' respective

production of relevant capacitors; ATC's capacity to produce;
incremental costs for ATC's hypothetical increased production;
and defendant's revenue and profitability for its allegedly
infringing sales. (*Id.*) Defendant also points out that
background information concerning the parties, their general
business operations, and the industry will be helpful to the
jury in understanding complex questions of fact. (*Id.* at 10-
11.) As an example, defendant notes that a Presidio witness
should be permitted to offer background information to the jury
as to why Presidio operates in a particular manner or to explain
its conduct based on Presidio's status as a small, family-run
business. (*Id.*) Defendant also notes an apparent conflict in
plaintiffs' motion, which seeks to preclude "any reference" to
the size and financial status of the parties, evidence of which
could be relevant to a determination of plaintiffs' lost
profits, by consideration of the production capacity of
plaintiffs, or a reasonable royalty rate which may consider a
hypothetical negotiation between the patentee and alleged
infringer.

     After considering the parties arguments, the court
GRANTS the motion as follows: neither party will be permitted to
refer to the parties' wealth, size, or finances to the extent it
is irrelevant and characterizes the dispute as one of David
versus Goliath. Financial and production capacity evidence

necessary to support a determination of damages will be
admitted.  For instance, the parties' relative market positions
may be relevant to a reasonable royalty determination, to the
extent such has been properly disclosed in an expert report.
But, a comparison of the relative ownership structure and wealth
of the parties would not be relevant to a determination of a
reasonable royalty.

## VI.   Capacitors Not Produced During Discovery

Plaintiffs next move to preclude defendant from
relying on evidence or testimony concerning capacitors that
defendant failed to produce.  (Pls.' MIL 13.)  Specifically, the
capacitors in question are BB0201 capacitors identified as PCI
170116-28 and PCI 170217-88.  (*Id.*)  These capacitors were at
issue in plaintiffs' *Daubert* motion, and at oral argument
defendant conceded it would not offer the non-produced
capacitors or related testimony or evidence at trial.  (*See*
Daubert Order 14.)  Plaintiffs' motion is thus GRANTED.

## VII.   Evidence Concerning Presidio's Equitable Defense

Plaintiffs move to preclude any evidence or testimony
concerning Presidio's equitable defense case which will be tried
to the court, not the jury.  (Pls.' MIL 15.)  Presidio does not
object, (Def.'s Opp. 15), and the motion is therefore GRANTED.

## VIII. High-Performance Broadband Capacitor Market

Plaintiffs' final motion *in limine* concerns its damages case and the relevant capacitor market for proving lost profits. Plaintiffs seek an order prohibiting defendant from arguing that the parties are not the only suppliers in the high-performance, broadband capacitor market. (Pls.' MIL 16.) That is, in order to prove that plaintiffs would have made the capacitor sales that it lost due to defendant's alleged infringement, plaintiffs may establish that the relevant market was a "two-supplier market," with defendant and plaintiffs as the only suppliers, such that all consumers would have turned to plaintiffs in the "but-for" case that defendant's infringing products were unavailable. (*Id.* at 16-17 (citing *Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1122 (Fed. Cir. 2003)).)

In support, plaintiffs first cite to deposition testimony from Presidio's co-owner, Chief Financial Officer, and product manager, Lambert Devoe, in which he admitted that "no other capacitor manufacturers are competitive with Presidio, ATC, and AVX in the market for high-performance broadband capacitors." (Pls.' MIL 17 (citing ECF No. 164-7, Ex. 5, L. Devoe Dep. 34:8-12).) Plaintiffs also rely on the doctrine of judicial estoppel and point to Presidio's winning arguments in *Presidio I* and *II*. (*Id.* at 18.) Specifically, plaintiffs represent that Presidio's position in those previous disputes

17

was that its BB capacitors and plaintiffs' 545L and 550 capacitors, the accused products in *Presidio I & II*, respectively, were the only products available in the high-performance, broadband capacitor market.  (*Id.*)

Plaintiffs argue that the elements of judicial estoppel are all met in this case, citing to *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001).  (Pls.' MIL 18.)  Plaintiffs first contend that Presidio's position in this case is clearly inconsistent with its earlier positions that the high-performance market consisted only of the parties.  (*Id.*) Second, plaintiffs argue the courts accepted defendant's two-supplier market argument in *Presidio I* and *II* as Presidio received an award of lost profits on this theory.  (*Id.*) Finally, plaintiffs argue they would suffer unfair detriment if Presidio is allowed to contradict its earlier position by arguing there are other suppliers in the high-performance market in this case.  (*Id.* at 18-19.)

Defendant responds that the record evidence in this case confirms there were other capacitor suppliers besides the parties during the relevant damages period.  (Def.'s Opp. 15.) Defendant further disputes that high-performance broadband capacitors constitute the relevant market for this case, and that the relevant markets between this case and the previous two litigations are necessarily different.  (*Id.*)  Defendant

contends that the courts in the parties' previous litigations only found that the parties were "direct competitors" and supplied products to the same customers or potential customers, not that the parties were the only two suppliers in the high-performance market. (*Id.* at 17.)

Defendant cites to lengthy portions of two of its experts' reports to argue that there is substantial evidence in the record that the relevant market is not a two-supplier market. (*Id.* at 16 (citing ECF No. 165-12, Ex. L, Randall Rept. 281-331; ECF No. 165-13, Ex. M, Thomas Rept. 22-27).) Accordingly, defendant argues that the relevant market in this case is defined by AVX's Accu-P product and that plaintiffs have not credibly disputed defendant's expert testimony establishing as much. (*Id.*) Defendant's response appears to focus on whether there are multiple suppliers that offer products that compete in the *disputed* relevant market, not whether the high-performance, broadband capacitor market is a two-supplier market or, more importantly, whether its previous positions are inconsistent with the one it takes now.

Whether or not the record establishes multiple suppliers in the relevant market in this case, under the doctrine of judicial estoppel, defendant may be bound by positions it took in a different litigation. Though Presidio may be hard-pressed to dispute or explain its representative's

deposition testimony as to the number of suppliers in the high-performance market, such testimony alone does not bind a party to the preclusion of contradictory arguments or explanations. The court must determine if Presidio's earlier positions are indeed inconsistent with the position it seeks to take in this litigation, potentially triggering judicial estoppel. Even if the parties dispute the suppliers in the relevant market for purposes of damages in this case, plaintiffs' motion seeks to estop defendant from inconsistently arguing that a particular market, the high-performance, broadband capacitor market, includes only the parties. Thus, it is apparent that the court need not rule on what constitutes the relevant market at this juncture in order to dispose of plaintiffs' motion *in limine*.

Judicial estoppel "prevents a party from asserting a factual position in a legal proceeding that is contrary to a position previously taken by [that party] in a prior legal proceeding." *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2d Cir. 1999) (citing *Bates v. Long Island R.R. Co.*, 997 F.2d 1028, 1037 (2d Cir. 1993)). "It is a 'rare remedy' used to avoid inconsistent outcomes and to prevent litigants from abusing the power of the court." *In re Initial Pub. Offering Secs. Litig.*, 383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005) (citing cases). A party invoking judicial estoppel must show: (1) that the party against whom the estoppel is asserted took an

inconsistent position in a prior proceeding; and (2) the party's initial position was adopted by the first tribunal in some manner. *Mitchell*, 190 F.3d at 6. In addition, courts in the Second Circuit often consider "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Am. Mfrs. Mut. Ins. Co. v. Payton Lane Nursing Home, Inc.*, 704 F. Supp. 2d 177, 192-93 (E.D.N.Y. 2010) (internal quotation marks omitted) (quoting *Uzdavines v. Weeks Marine, Inc.*, 418 F.3d 138, 147 (2d Cir. 2005)). Within the Second Circuit, the "application of judicial estoppel is limited to situations where the risk of inconsistent results threatens the integrity of the judicial process." *Simon v. Safelite Glass Corp.*, 128 F.3d 68, 72-73 (2d Cir. 1997). That is, the previous purported inconsistent statement must have a material effect on the outcome of the subsequent proceeding. *Id.* at 72-73; *see also Negron v. Weiss*, No. 06-CV-1288, 2006 WL 2792769, at *4 (E.D.N.Y. Sept. 26, 2006) (noting that judicial estoppel does not apply "if the statements or positions in question can be reconciled in some way").

A review of the decisions in *Presidio I* and *II*, and especially the portions cited by plaintiffs, does not conclusively establish that Presidio argued the high-performance, broadband capacitor market was a two-supplier

market.  The court agrees with defendant that the Federal
Circuit in *Presidio I* only concluded that the parties competed
"head-to-head" and that there were no acceptable, non-infringing
alternatives.  A conclusion that there are no non-infringing
alternatives when two suppliers compete head-to-head does not
necessarily mean that the high-performance market had only two-
suppliers during the relevant period.  That is especially so
when the patent at issue in *Presidio I* is different than the
patents-in-suit and available, non-infringing alternatives to
that patent may be different than the products at issue here.
Moreover, the court doubts that the *Presidio I* decision, and
Presidio's argument seeking such affirmance, concerned a two-
supplier market, because the Federal Circuit, in reaching its
decision, referred only to the *Panduit* four-factor lost profits
test, not the collapsed, two-supplier market test articulated by
*State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1578
(Fed. Cir. 1989).  *Accord Micro Chem.*, 318 F.3d at 1124.  Thus,
it is not readily apparent that defendant's position before the
trial court or Federal Circuit in *Presidio I*, as adopted by
those courts, is inconsistent with its position in this case
that the high-performance broadband capacitor market is not a
two-supplier market.

         The same is true for *Presidio II*, except there the
district court for the Southern District of California

considered competition between the parties in the context of an irreparable harm analysis. A review of that decision likewise does not establish that Presidio took the position, or that the court ultimately adopted Presidio's position, that the high-performance broadband capacitor market is a two-supplier market. Thus, judicial estoppel is not applicable, and the court DENIES plaintiffs' eighth motion *in limine*.

**DEFENDANT'S MOTIONS *IN LIMINE***

## I.  Decisions in Related IPR Proceedings

Defendant seeks to preclude the decisions rendered by the PTAB during IPR for the patents-in-suit as prejudicial and irrelevant. (Def.'s MIL 1.)  In ruling on plaintiffs' motions *in limine*, the court has already precluded evidence of the PTAB's decisions during IPR, thus, defendant's first motion is DENIED as moot.

## II.  Issues to be Tried by the Court

Presidio next moves the court to preclude plaintiffs from offering evidence related to plaintiffs' request for a permanent injunction, an award of enhanced damages, and an award of attorneys' fees and costs. (Def.'s MIL 4.)  Plaintiffs concede they will not offer evidence relevant only to decisions reserved for the court.  Plaintiffs represent they will not offer such evidence before the jury but seek to ensure they will not be precluded from offering their damages case or evidence of

the harm plaintiffs allegedly suffered due to Presidio's alleged infringement. (Pls.' Opp. 3.) Defendant responds that plaintiffs should not be permitted to offer evidence of irreparable or reputational harm related to its requested permanent injunction to prove damages. (Def.'s Reply 2-3.)

Defendant's motion is GRANTED regarding evidence of plaintiffs' request for injunctive relief, enhanced damages, and attorneys' fees and costs. This order does not, however, impact plaintiffs' ability to present their damages case related to the economic harm caused by defendant's alleged infringement. It is not clear to the court why reputational harm or irreparable harm would be relevant to an issue put to the jury, as both are for the court to consider when deciding whether to issue a permanent injunction of the '791 Patent. *See Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012) ("Price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm.").

## III. Presumption of Validity

Presidio next seeks to preclude plaintiffs from offering evidence or attorney argument related to the statutory presumption of validity that attaches to issued patents as irrelevant and as potentially confusing. (Def.'s MIL 6.) Plaintiffs respond that the jury will be instructed on

defendant's burden of proving invalidity by clear and convincing evidence, and that the presumption necessarily explains why the law imposes such a burden of proof.  (Pls.' Opp. 4-5.) Plaintiffs further assert that the American Intellectual Property Law Association's model patent jury instructions expressly references the presumption of validity, contrary to defendant's assertion.  (*Id.* at 5-6.)  This reference, however, is included with preliminary jury instructions, not with instructions given after the close of evidence on a defendant's invalidity contentions or the burden of proof.  (*See* ECF No. 170-2, Pls.' Opp., Ex. 1, Am. Intell. Prop. Law Assoc. Model Patent Jury Instrs. 3.)  Defendant points to other reputable aids, including the Federal Circuit Bar Association's Model Patent Jury Instructions, which do not reference the presumption in its model instructions.  (Def.'s MIL 8 (citing Fed. Cir. Bar Assoc. Model Patent Jury Instrs. Handbook § B.4.1)); *but see, e.g.,* 7th Cir. Pattern Jury Instrs. (Patents) § 11.3.1 ("Each of the claims of the ____ patent(s) is presumed to be valid."). Importantly, the Committee Note to one of defendant's cited treatises, the National Jury Instruction Project's Model Patent Jury Instructions, indicates either approach is consistent with Federal Circuit law, and that an instruction that includes the presumption of validity is the "more traditional approach."

Nat'l Jury Instr. Project Model Patent Jury Instrs. § 5.1
committee's note.

Defendant is correct that the presumption is not
evidence to be weighed by the jury. However, as with the
presumption of innocence in a criminal trial, it will be helpful
and not at all confusing to a jury to understand *why* the
particular party bears the burden of proof, and that the burden
is greater than a preponderance of the evidence. The Federal
Circuit authority defendant cites to in support of its argument,
*Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1258-59 (Fed.
Cir. 2004), did not hold that trial courts must refrain from
instructing jurors on the presumption of validity. Instead, the
Federal Circuit held that district courts do not err in
declining to instruct the jury on the presumption of validity.
*Id.* It does not follow that courts must preclude all mention of
the presumption. Moreover, the court does not accept
defendant's assertion of juror confusion, and instead views the
presumption and the burden of proof as "different expressions of
the same thing—a single hurdle to be cleared." *Id.* (quoting *Am.
Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1360
(Fed. Cir. 1984)) (internal quotation marks omitted).

The court will instruct the jury on the presumption of validity and the parties are permitted to reference it in their closing arguments.[3] Defendant's motion is therefore DENIED.

## IV.   Pre-Suit Notice of Infringement

Defendant next moves to preclude evidence of plaintiffs' purported notice to defendant of any alleged infringement prior to commencing this lawsuit. (Def.'s MIL 10.) Plaintiffs respond that they will not present evidence that they informed Presidio of the alleged infringement before filing this suit. (Pls.' Opp. 6.) Plaintiffs note that evidence that goes to damages or willfulness should not be precluded by defendant's motion. (*Id.*) As the parties appear to agree, defendant's motion is GRANTED. Plaintiffs may not reference or offer evidence concerning any pre-suit notice to Presidio of the alleged infringement in this case.

## V.   Alleged Copying

Presidio next moves to preclude evidence concerning any alleged copying by it of plaintiffs' products. (Def.'s MIL 11.) Defendant argues that plaintiffs have never practiced, or sold a product that practiced, the patents-in-suit, and furthermore that plaintiffs did not disclose any copying

---

[3]   The court views this dispute as one more appropriate for the final charging conference, and notes that the parties have indicated this dispute in their joint requests for jury instructions. (*See* ECF No. 173-7, Ex. G, Joint Requested Final Jury Instructions 16.)

allegations to Presidio during discovery. (*Id.*) Defendant specifically seeks to preclude evidence that it was aware of ATC's 500 capacitor. (*Id.* at 12.) In responding to Presidio's Interrogatory No. 11, which sought all information supporting plaintiffs' willful infringement allegation, plaintiffs failed to raise or describe any copying by Presidio. (Def.'s MIL 11 (citing ECF No. 169-2, Ex. B, Pls.' 2d Supp. Resps. Def.'s Interrogs. 3).) This failure, defendant argues, warrants preclusion under Federal Rules of Civil Procedure 26 and 37. (*Id.* at 11-12.)

Plaintiffs respond that defendant's request is vague as it does not identify specific evidence to be precluded and that evidence of Presidio's analysis of the 500 capacitor is relevant to damages. (Pls.' Opp. 7.) Plaintiffs further respond that they were not in a position to include "copying" allegations in its interrogatory responses because Presidio had designated such information "Attorneys' Eyes Only" during discovery, and did not de-designate the relevant information until after the close of discovery. (*Id.* at 7-8.) As such, plaintiffs' corporate representative was unaware of the documents forming the basis for a copying allegation when he verified plaintiffs' interrogatory responses. (*Id.* at 8.) Furthermore, plaintiffs argue that their failure to assert their copying allegation is harmless because Presidio controlled the

evidence at issue, it was raised in depositions with Presidio's witnesses, and it was also addressed by the parties during summary judgment. (*Id.*)

Defendant also invokes FRE 403, arguing that the evidence related to the 500 capacitor is not probative of a claim of copying and would only serve to confuse or mislead the jury. (Def.'s MIL 13.) Defendant argues that even if it copied ATC's 500 capacitor, it is undisputed that the 500 capacitor "is not covered by a patent, much less either of the patents-in-suit." (Def.'s Reply 5-6.)

Plaintiffs respond that they should be permitted to reference Presidio's analysis of ATC's 500 capacitor to contradict Presidio's argument that vias, as recited in claim 2 of the '791 Patent, are not important or valuable to the '791 Patent. (Pls.' Opp. 8.) That is, after Presidio analyzed ATC's 500 capacitor, as evidenced by handwritten notes attached as Exhibit 2 to plaintiffs' opposition, Presidio added vias to its BB capacitors in 2001 to address design deficiencies. (*Id.* (citing ECF No. 170-3, Ex. 2, Devoe Notebook 7).)

As to plaintiffs' claim that ATC's 500 capacitors are relevant to damages, defendant contends that the evidence related to ATC's 500 capacitor is from 2000 or 2001, and that plaintiffs' damages claims are limited to 2008 and later. (Def.'s Reply 6.) Defendant further disputes that the 500

capacitor is relevant to lost profits or a reasonable royalty, and points out that plaintiffs' own expert fails to mention the 500 capacitor in his report. (Def.'s MIL 13.) However, it appears plaintiffs will attempt to use the disputed evidence to counter defendant's attack on the value of the claimed vias in the '791 Patent, not to establish lost profits of the 545L or 550 capacitors.

Defendant's motion is vague and likely overbroad if it seeks to preclude *all* evidence of copying without pointing to specific evidence. Though plaintiffs will be held to their discovery responses, the copying that appears to be the subject of this disputed motion *in limine* concerns ATC's 500 capacitor. Defendant's undisputed representation that ATC's 500 capacitor does not practice either of the patents-in-suit casts doubt that the alleged copying of the 500 capacitor is probative of willful infringement of the patents-in-suit. Moreover, "there is significant prejudice associated with [copying] evidence, as a jury may use evidence of copying to unfairly conclude that Defendant's products infringe the patents-in-suit." *Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 13-CV-3999, 2015 WL 4129193, at *6 (N.D. Cal. July 8, 2015); *see also Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1366 (Fed. Cir. 2001) ("[E]vidence of copying [the patentee's product] is legally irrelevant unless the [product] is shown to be an embodiment of

the claims."). Consequently, plaintiffs are precluded from offering proof of copying related to the 500 capacitor to prove willful infringement of the patents-in-suit. Defendant's motion to preclude copying evidence regarding the ATC 500 capacitor is thus GRANTED.

The court, however, understands that plaintiffs seek to present evidence of ATC's 500 capacitor to establish damages by proving the value of the patented technology. The court notes that it is unclear from the submissions, including the attached notes to plaintiffs' Exhibit 2, (ECF No. 170-3), how Presidio's inspection of ATC's via-less 500 capacitor would compel Presidio to introduce vias into its BB capacitors; defendant describes this leap as "illogical[]," certainly reducing the risk that the jury might make such an inference. (Def.'s Reply 5.) Plaintiffs, however, have failed to sufficiently explain the relationship between defendant's awareness of the via-less 500 capacitor and Presidio's alleged decision to incorporate vias into its BB capacitors. Thus, defendant's motion to preclude any evidence that it was aware of the 500 capacitor is GRANTED.

## VI. Willful Conduct Prior to May 6, 2002

Defendant next seeks to preclude plaintiffs from offering evidence related to its claims of willful infringement of the '791 Patent stemming from conduct that occurred prior to

May 6, 2002.  (Def.'s MIL 13-14.)  According to defendant,
plaintiffs have not pointed to any evidence that an individual
at Presidio was aware of the '791 Patent prior to May 6, 2002.
(*Id.* (citing ECF No. 169-3, Ex. C, Def.'s 8th Supp. Resps. Pls.'
1st Interrogs. 27-28 ("Presidio was aware of the '791 patent no
later than May 6, 2002.")).)  In the alternative, defendant
notes that it could not possibly be a willful infringer prior to
January 8, 2002, when the '791 Patent issued, such that any
evidence pre-dating the '791 Patent's issue would be irrelevant.
(*Id.*)  Defendant argues that any activities prior to January 8
or May 6, 2002 would only serve to cast it in a negative light
and should thus be excluded under FRE 403.  (*Id.*)  Plaintiffs
respond that defendant's motion is once again vague because it
fails to specifically identify the evidence to be excluded.
(Pls.' Opp. 9.)  Plaintiffs further argue that evidence
predating May 6, 2002 includes evidence of Presidio's decision
to incorporate vias in its BB capacitors as early as 2000 which
is relevant at least to damages.  (*Id.*)

　　　　First, Presidio's discovery response is fairly read to
be an admission that the *latest* date on which it became aware of
the '791 Patent was May 6, 2002, not the *earliest*.  Thus, the
court will not rely on that date as the earliest time for which
defendant can be held liable for willful infringement of the
'791 Patent.  But the court also agrees with defendant that

evidence of conduct occurring before the '791 Patent issued is not probative of willful infringement of the '791 Patent. *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1995) ("To willfully infringe . . . the patent must exist and one must have knowledge of it."). Thus, and as with defendant's fifth motion *in limine*, evidence pre-dating the '791 Patent's issue may not be offered to prove willful infringement. To the extent plaintiffs seek to offer evidence of acts occurring between January 8, 2002 and May 6, 2002 to prove willful infringement, the parties may raise this issue and present the offered exhibits or testimony during the Final Pretrial Conference so that the court may rule ahead of trial. Plaintiffs are also permitted to offer evidence prior to May 6, 2002 that demonstrates the value of the claimed vias to prove damages. Defendant's motion is therefore GRANTED in part and DENIED in part.

## VII. Willful Conduct After Commencement of the Action

Defendant next argues plaintiffs should be precluded from referencing or introducing evidence to prove willful infringement *after* the filing of this lawsuit. (Def.'s MIL 14.) Defendant argues that under Federal Circuit law, enhanced damages for willful infringement are not available for infringement after the suit is commenced if the patentee did not first seek a preliminary injunction. (*Id.* at 14-15 (citing *In*

33

*re Seagate Tech., LLC*, 497 F.3d 1360, 1374 (Fed. Cir. 2007)).)
Because plaintiffs are not entitled to damages for willfulness
post-filing, defendant argues, evidence of willful conduct
occurring after this action was filed is irrelevant. (*Id.* at
15.) Moreover, defendant argues, plaintiffs failed during
discovery to identify any post-filing conduct that they would
rely on to prove willful infringement. (*Id.*) Finally,
defendant argues that under FRE 403, the minimal probative value
of such evidence risks confusing the jury as to infringement,
and further risks casting Presidio in a negative light. (*Id.*)

Plaintiffs respond that defendant misstates Federal
Circuit law. (Pls.' Opp. 9.) According to plaintiffs, the
Federal Circuit clarified that there is "'no rigid rule' that a
patentee must seek a preliminary injunction in order to seek
enhanced damages." (*Id.* (citing *Mentor Graphics Corp. v. EVE-
USA, Inc.*, 851 F.3d 1275, 1295-96 (Fed. Cir. 2017)).)
Plaintiffs appear to address only the more general question of
whether a patentee must seek an injunction to claim willful
infringement at all, not whether conduct after a complaint is
filed can be used to prove willfulness if the patentee fails to
seek such injunctive relief. Defendant responds that *Mentor
Graphics* dealt only with pre-suit acts and does not apply to the
facts of this case. (Def.'s Reply 7.) The Federal Circuit in
*Mentor Graphics*, however, was quite clear that "[the district

34

court] erred in concluding that [the patentee] could not present evidence of post-filing willful infringement because [it] did not seek a preliminary injunction," *Mentor Graphics*, 851 F.3d 1295, exactly the relief that Presidio requests now. The court explained that there is "no rigid rule" that a patentee must seek a preliminary injunction in order to seek enhanced damages, quoting Supreme Court precedent in support. *Id*. at 1296 (citing *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S.Ct. 1923, 1934 (2016)).

The court agrees with plaintiffs that Federal Circuit case law does not require a patentee to seek a preliminary injunction before seeking willfulness damages based on post-suit conduct. Thus, evidence of post-suit willful infringement by Presidio is not irrelevant. Moreover, the court is not persuaded the risk of confusion or prejudice substantially outweighs the probative value of the post-suit conduct under FRE 403. Defendant's argument that plaintiffs did not disclose that it would rely upon post-suit conduct to demonstrate willfulness is also unpersuasive, as plaintiffs indicated in the same discovery response that defendant's own witnesses, Lambert and Alan Devoe, have information concerning willful infringement. Defendant's motion is therefore DENIED.

## VIII.   Plaintiffs' Products Covered by Plaintiffs' Patents

Presidio moves the court to preclude plaintiffs from offering evidence that plaintiffs' own products, that is, the 500, 545L, and 550 capacitors fall within the scope of the claims of plaintiffs' patents.  (Def.'s MIL 17.)  Presidio points out that such proof would require an expert opinion, but that plaintiffs have not disclosed an expert opinion to that effect.  (*Id.*)  Plaintiffs respond that they will not offer such an opinion or argument at trial.  (Pls.' Opp. 10-11.)  Thus, defendant's motion as to this point is GRANTED.

Plaintiffs, however, note that defendant's motion does not seek to preclude evidence that plaintiffs possess patents other than the patents-in-suit.  (*Id.* at 11.)  Plaintiffs argue their witnesses, John Mruz and Andrew Ritter, former employees of ATC and AVX, should be permitted to testify concerning their development of the 545L and 550 capacitors and the related patents that were awarded to plaintiffs and that named Mruz and Ritter as inventors.  (*Id.*)  This testimony, plaintiffs contend, is relevant to damages to demonstrate the value of the patents-in-suit.  Moreover, plaintiffs argue such testimony is relevant to demonstrate Mruz's and Ritter's qualifications and credibility.

The court does not agree that evidence of unrelated patents naming Mruz and Ritter as inventors establishes their

respective credibility.  Moreover, if these two witnesses are testifying as percipient, fact witnesses, plaintiffs need not demonstrate their qualifications.  As to damages, citing the existence of other patented technology does not demonstrate the value of the patents-in-suit, and instead may risk juror confusion.  Thus, the court precludes Mruz and Ritter from testifying as to the existence of plaintiffs' patents, other than the patents-in-suit.

## IX.  Undisclosed Expert Opinions

Next, in anticipation that plaintiffs will offer expert testimony not contained in an expert report, Presidio moves the court to preclude any such opinion under Federal Rule of Civil Procedure 26.  (Def.'s MIL 17.)  Plaintiffs respond that defendant's motion is moot as their experts will testify only to opinions disclosed in their reports.  (Pls.' Opp. 12.) Defendant attempts to clarify its motion by describing five examples of opinions or testimony it anticipates plaintiffs' experts will offer but did not disclose in their reports. (Def.'s MIL 17.)  However, much of defendant's concerns with plaintiffs' experts' reports were already addressed when defendant framed these arguments under *Daubert* to attack the respective expert's reliability.  The court has already ruled on the parties' motions pursuant to *Daubert* and will not revisit its rulings.  The parties' respective experts may only offer

testimony as described in their reports and as further limited by the court's *Daubert* decision. Thus, defendant's motion is DENIED as moot.

## X.  Irrelevant Testing

Presidio next moves *in limine* to preclude reference by plaintiffs' technical expert, Dr. Hillman, to testing that Presidio claims is irrelevant.  (Def.'s MIL 22-23.)  Dr. Hillman's testing is irrelevant, according to Presidio, because it does not reflect "ordinary use of the capacitors."  (*Id.*) Presidio argues, the mere fact Dr. Hillman undertook such testing could confuse the issues for the jury and thus warrants preclusion under FRE 403.  (Def.'s Reply 9-10.)  Plaintiffs' respond that Dr. Hillman's testing is relevant to prove damages, and that Dr. Hillman's testing replicated normal operating conditions for the accused products. (Pls.' Opp. 13-14.)

Dr. Hillman's report indicates that he removed the surface pads of certain BB capacitors to test the impact of the claimed invention in the '547 Patent upon the BB capacitor's performance.  (ECF No. 146-2, Ex. 1, Hillman Rept. ¶ 53.)  After "mechanically remov[ing]" the surface pads, Dr. Hillman tested the insertion loss of the BB capacitors and concluded that the insertion loss performance was "significantly worse with the surface pads removed."  (*Id.*)  As for the '791 Patent, Dr. Hillman "simulate[d] damage to, or imperfections in, the

external surface pads," for Presidio's BB capacitors without vias, and subsequently tested insertion loss performance for these via-less capacitors. (*Id.* ¶ 83.) Dr. Hillman does not specify what conditions or methods he used to remove the surface pads or simulate damage to the same, but Presidio represents he "microblasted" the capacitors to remove certain features. (Def.'s MIL 22.)

The court understands that the purpose of Dr. Hillman's testing as described in paragraphs 53 and 83 of his report is to demonstrate the impact of the patented technology on the performance of the accused products, *i.e.* its value. As to the '547 Patent, whether or not the accused products' surface pads would be removed by "microblasting" in real world conditions is irrelevant; what matters is how the surface pads, or lack thereof, impact the performance of BB capacitors. The same is true for vias claimed in the '791 Patent, although Dr. Hillman is less clear about the conditions under which the surface pads would manifest imperfections or sustain damage. In any event, the value of the claimed invention, here vias, is relevant to damages. Dr. Hillman's testing and resulting opinion is admissible evidence that demonstrates value. By extension, plaintiffs' damages expert is entitled to rely on Dr. Hillman's opinion in determining a reasonable royalty.

Defendant's motion is thus DENIED as Dr. Hillman's
conclusion and predicate testing are relevant.  Defendant,
however, may cross-examine Dr. Hillman on the realism of the
simulated damages and imperfections he introduced to test
insertion loss performance of the via-less BB capacitors, and,
in general, as to the efficacy of his insertion loss testing.

## XI.  Scope of the Relevant Market

Defendant's final motion *in limine* seeks to exclude
evidence and arguments proving the scope of the relevant market
through irrelevant patents.  (Def.'s MIL 23.)  Defendant
contends that only the patents-in-suit define the scope of the
market and that evidence regarding the scope of the market
pertaining to other patents, such as Presidio's patents, is
irrelevant and should be excluded under FRE 403.  (*Id.*)
Plaintiffs respond that this motion is a "veiled attempt" to
avoid Lambert Devoe's deposition testimony that the parties are
the only two suppliers in the high-performance broadband
capacitors market.  (Pls.' Opp. 15.)  Plaintiffs also argue that
Presidio's contention that the *patent* defines the market is
incorrect; instead, the infringing device that incorporates the
patented invention, and any competing products, define the
relevant market.  (*Id.* at 14.)

The law is quite clear as to what constitutes the
relevant market, and both parties cite to the correct authority

40

in *Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119 (Fed. Cir. 2003): "[t]he proper starting point to identify the relevant market is the patented invention." *Id.* at 1124. Also included in the relevant market are other devices or substitutes similar in physical and functional characteristics; devices that are significantly different in price or characteristics are excluded. *Id.* The court agrees with defendant that it would be improper to define the relevant market by reference to other patents. The market is defined by the patented invention and other devices or substitutes with similar physical and functional characteristics, *i.e.*, competing products. It remains unclear, though, what evidence offered by plaintiffs Presidio seeks to exclude with this motion.

In any event, if the accused products are found to infringe, *i.e.* practice the patented invention, they would surely be included in the relevant market, as would any substitutes similar in physical and functional characteristics. Defendant's motion is GRANTED, and neither party will be permitted to offer evidence of other patents to argue for a particular relevant market. However, this does not mean that other devices or substitutes for the patented invention that also practice unrelated patents may not define the relevant market.

**REMAINING OBJECTIONS**

**I. Plaintiffs' Remaining Trial Objections**

1. <u>Exhibits WK, WL, WO, WQ</u>: **sustained**; admission of these physical samples of capacitors labelled "UNTERMED" risks prejudice to plaintiffs and confusing the jury under FRE 403. The presentation of "untermed" capacitors or, as the court understands, capacitor bodies without terminations applied, impermissibly assumes the construction of the claim term and, further, is of apparently minimal probative value.

2. <u>Relevant Market</u>: The court denied plaintiffs' eighth motion *in limine* requesting application of judicial estoppel, thus it rules on plaintiffs' related objections as follows:

   i. Designated depositions: **overruled**;

   ii. Exhibits IZ, JK, OH: **overruled**, plaintiffs' internal descriptions of the characteristics of their own products and their view of competition and the market is relevant to damages;

3. <u>Other Litigations</u>: The court granted plaintiffs' first motion *in limine* to preclude all reference to the parties' other litigations. As such, it rules on plaintiffs' related objections as follows:

i. Mruz Dep. 154:8-23: **sustained**; though the transcript on its face does not refer to the parties' other litigations, it also does not appear to be relevant to issues in this case;

ii. Exhibits GF, GN: **overruled**; exhibits GF and GN are internal AVX presentations that likewise do not appear to refer to the parties' previous litigation, but do reference Presidio, and plaintiffs' views of Presidio's products, including their relative performance and limitations.  With sufficient foundation, these exhibits are potentially probative of whether plaintiffs' products are appropriate substitutes for the accused products in determining lost profits.

iii. Exhibits PL, PM, PN, PP, PS, PT, PX, QF: **sustained**.  The remaining exhibits, PL, PM, PN, PP, PS, PT, PX, and QF, are Presidio emails, both internal and with prospective customers, reflecting a desire by the customers to purchase a replacement part from Presidio for plaintiffs' GX capacitor.  The emails reference in passing infringement by plaintiffs as the cause for these purchasers to look elsewhere for capacitors.  It

is not immediately clear to the court how these emails are probative of available non-infringing substitutes on the market for purposes of damages. Moreover, the majority of these exhibits appear to be hearsay. Defendant's exhibits PL, PM, PN, PP, PS, PT, PX, and QF are thus precluded.

4. Exhibits K and Q related to the '879 Patent: **sustained**; the court has already granted plaintiffs' fourth motion *in limine*.

5. Ritter's deposition testimony re: L-Shaped terminations: **sustained**, for reasons that should be abundantly clear to defendant by this point in the litigation.

6. Exhibits BE and YF: **overruled** as to Exhibit BE, defendant represents the exhibit is relevant to its invalidity case, (ECF No. 175, Def.'s Notice 10-11); **reserved** as to Exhibit YF, the manufacturing process of the plaintiffs' products is not relevant but the document, with sufficient foundation, which is lacking on its face, is probative of plaintiffs' view of a Devoe patent or invention and of the value of plaintiffs' patented technology with L-shaped terminations; defendant may demonstrate why that view

is *relevant* to its case at the Final Pretrial
Conference.

**II.   Defendant's Remaining Objections**

1.   <u>Evidence Presidio Copied Unrelated Products</u>: The court
     granted Presidio's fifth motion *in limine*, which
     sought to preclude evidence of copying to prove
     willful infringement, and evidence that Presidio was
     aware of ATC's 500 capacitor.  Presidio's objection is
     thus, **sustained.**

2.   <u>Presidio's Awareness of Unrelated Patents</u>: **sustained**;
     the highlighted deposition testimony is not relevant
     and risks prejudice; the court will not admit evidence
     that Presidio was aware of *other* ATC or AVX patents as
     it would invite the jury to find that Presidio
     willfully infringed the patents-in-suit because it had
     copied other patents in the past; as to plaintiffs'
     offered Exhibit 97, this email does not appear to be
     relevant to infringement in this case and is excluded.

3.   <u>Presidio Purchase Orders, Terms & Conditions, Emails
     and Brochures</u>: **sustained**; plaintiffs seek to offer an
     email discussion between Presidio employees
     responsible for designing a brochure for Presidio
     capacitors, including BB capacitors.  While the email
     refers to defendant's copying portions of an ATC

brochure, this alone would not be probative of willful infringement of the patents-in-suit, and instead may risk the jury drawing impermissible inferences based on unrelated conduct by defendant. Moreover, evidence of copying materials unconnected to commercial embodiments of the patents-in-suit risks misleading and confusing the jury or permitting the prejudicial inference that defendant infringed the patents-in-suit based on unrelated copying. It appears to be undisputed that plaintiffs have never practiced or sold a product that practices the '791 Patent. (*See* Def.'s MIL 11; Pls.' Opp. 10-11 ("Plaintiffs will not present argument or evidence at trial that the 500, 545L, or 550 capacitors are within the scope of any patent claims.").)

4.  Unrelated Patents: The court has already granted Presidio's eighth motion *in limine* and precluded testimony or evidence related to patents that are not the patents-in-suit as irrelevant. Thus, defendant's objection to plaintiffs' trial Exhibits 11 and 12 is **sustained**.

5.  Expert Reports: As stated in the court's order deciding the parties' *Daubert* motions, the court will not admit expert reports as documentary evidence.

However, the exhibits disclosed in the parties'
respective expert reports that demonstrate expert
conclusions are generally admissible, if permitted by
the Federal Rules of Evidence, and may be used as
demonstratives at trial.  Thus, defendant's objection
is **sustained**, and the court will not admit entire
expert reports.

6.  <u>Slavitt Deposition Testimony</u>: **overruled**; Presidio's
challenge to Slavitt's deposition testimony, in his
personal capacity and as plaintiffs' corporate
designee, amounts to a challenge for lack of personal
knowledge.  Plaintiffs can establish at trial a
foundation for Slavitt's personal knowledge.  The fact
that he is in-house counsel does not necessarily mean
he is not aware of plaintiffs' marketing activity or
its sales and operations.

**CONCLUSION**

For the foregoing reasons the court grants in part and
denies in part the parties' motions *in limine*.  Prior to the
Final Pretrial Conference, the parties must confer to attempt to
resolve any remaining evidentiary disputes and shall come

prepared to offer proof as to those exhibits only, specifically

defendant's Exhibit YF and willful infringement evidence pre-

dating May 6, 2002.

**SO ORDERED.**
Dated: May 31, 2019
      Brooklyn, New York

                                           /s/
                                    _____
                                    **HON. KIYO A. MATSUMOTO**
                                    United States District Judge
                                    Eastern District of New York