UNITED STATES DISTRICT COURT FOR

THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN TECHNICAL CERAMICS CORP., ET AL. </br></br>Plaintiffs </br></br>vs. </br></br>PRESIDIO COMPONENTS, INC. </br></br>Defendant. | Case No. 2:14-CV-06544 KAM-GRB </br></br>Judge Kiyo A. Matsumoto </br>Magistrate Judge Gary R. Brown |

**DEFENDANT PRESIDIO COMPONENTS, INC.'S
MEMORANDUM IN SUPPORT OF POST-TRIAL MOTION
<u>REGARDING INDEFINITENESS AND WAIVER</u>**

## **TABLE OF CONTENTS**

**PAGE**

I. INTRODUCTION ........................................................................................................... 1

II. BACKGROUND ............................................................................................................. 1

    A.    The Trial ................................................................................................................ 1

    B.    The Jury's General Verdict .................................................................................. 2

III. ARGUMENT .................................................................................................................. 4

    A.    The Law Governing Indefiniteness ..................................................................... 4

    B.    The Jury Correctly Found There Is No Reasonably Certain Standard For Determining What Constitutes A "Negligible" Amount Of Termination On The Top Surface ....................................................... 5

IV. ARGUMENT - PLAINTIFFS KNOWINGLY WAIVED THEIR RIGHT TO SUE PRESIDIO FOR INFRINGEMENT OF THE '791 PATENT ........................ 11

V. CONCLUSION .............................................................................................................. 15

# **TABLE OF AUTHORITIES**

**PAGE**

**CASES**

*Aczel v. Labonia,*
    584 F.3d 52 (2d Cir. 2009) ................................................................................................ 3

*Anderson Group, LLC v. City of Saratoga Springs*,
    805 F.3d 34 (2d Cir. 2015) ................................................................................................ 3

*Dow Chem. Co. v. NOVA Chem. Corp.*,
    803 F.3d 620 (Fed. Cir. 2015) .......................................................................................... 4

*Function Media, LLC v. Google*,
    708 F.3d 1310 (Fed. Cir. 2013) ........................................................................................ 3

*GE Lighting Sols., LLC v. Lights of Am. Inc.*,
    663 F. App'x 938 (Fed. Cir. 2016) ................................................................................... 8

*Guzik Tech. Enters., Inc. v. W. Dig. Corp.*,
    Case No. 11-CV-03786-PSG, 2013 U.S. Dist. LEXIS 101538
    N.D. Cal. July 19, 2013) .................................................................................................. 5

*Hudson River Sloop Clearwater, Inc. v. Dept. of the Navy*,
    Case No. CV-86-3292, 1989 U.S. Dist. LEXIS 19034 (E.D.N.Y. May 1, 1989) .......... 14

*Innovative Display Tech. LLC v. Acer Inc.*,
    Case No. 2:13-CV-522, 2014 U.S. Dist. LEXIS 118422 (E.D. Tx. Aug. 26, 2014) ........ 5

*Intellectual Ventures LLC v. AT&T Mobility LLC*,
    Case No. 13-1668, 2016 U.S. Dist. LEXIS 107273 (D. Del. Aug. 12, 2016) .................. 5

*Interval Licensing LLC v. AOL, Inc.*,
    766 F.3d 1364 (Fed. Cir. 2014) ........................................................................................ 4

*J&J Sports Productions, Inc. v. Catano*,
    Case No. 12-cv-739, 2012 U.S. Dist. LEXIS 159876 (E.D. Cal. Nov. 6, 2012) ............ 15

*Jarvis v. Ford Motor Co.*,
    283 F.3d 33 (2d Cir. 2002) ................................................................................................ 3

*Lavoie v. Pacific Press & Shear Co.*,
    975 F.2d 48 (2d Cir. 1992) ................................................................................................ 3

*Manes v. Metro N.C. Railroad*,
    801 F. Supp. 954 .................................................................................................................. 3

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    134 S. Ct. 2120 (2014) ..................................................................................................... 4, 5

*Qualcomm, Inc. v. Broadcom Corp.*,
    548 F.3d 1004 (Fed. Cir. 2008) .......................................................................................... 14

*Storm Products, Inc. v. Ebonite Int'l., Inc.*,
    638 F. Supp. 2d 1307 (D. Utah 2009) .................................................................................. 5

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
    789 F.3d 1335 (Fed. Cir. 2015) ............................................................................................ 4

## OTHER AUTHORITIES

*Black's Law Dictionary* 1399 (5th ed. 1979) ................................................................................ 3

*Black's Law Dictionary* 1696-97 (9th ed. 2009) .......................................................................... 3

I.  INTRODUCTION

Pursuant to the Court's June 28, 2019 Order, Presidio submits its post - trial motion on the remaining issues to be decided by the Court. Specifically, Presidio requests that the Court adopt the jury's general verdict that the claim term in the '547 patent "negligibly over a top surface of said device body" is indefinite, thus rendering all claims of the '547 patent invalid. In addition, Presidio moves for a finding that Plaintiffs waived their right to sue for infringement of the '791 patent. Plaintiffs intentionally decided to not sue Presidio for infringement, despite actual knowledge of the alleged infringement for more than a decade.

II.  BACKGROUND

A.  The Trial

During the ten – day trial in this matter, the jury was presented with ample evidence regarding the issues that are the subject of Presidio's Motion – indefiniteness and waiver. On the issue of indefiniteness of the '547 patent, the jury heard testimony from Plaintiffs' infringement expert, who admitted that upon review of the '547 patent specification and claims, he could not determine whether products have "terminations extending…negligibly over the top surface." In addition, the jury heard testimony from Plaintiffs' corporate representative, an engineer with several decades of capacitor design experience, who likewise admitted that he could not explain the scope of a "negligible" or "small" amount of termination. Presidio's technical expert was of the same opinion, testifying that the '547 patent specification, claims, and prosecution history do not provide sufficient information for a person of skill in the art ("POSITA") to determine the scope of the claim term "terminations extending…negligibly over the top surface." Plaintiffs' validity expert agreed, previously testifying under oath that there is not sufficient information in

1

the '547 patent specification or claims for a POSITA to understand, with reasonable certainty, the scope of a "negligible" or "small" amount of termination.

On the issue of waiver, the jury was presented with undisputed evidence that Plaintiffs knew since 2002 that the vias claimed in the '791 patent were found in Presidio's Buried Broadband capacitors ("BB capacitors"), the same products that Plaintiffs accused of infringement. Plaintiffs' engineers analyzed Presidio's BB capacitors and repeatedly cross–sectioned them to inspect their internal structures, and in fact determined at that early time that those products included the vias that are claimed in the '791 patent. Plaintiffs' engineers also repeatedly described the vias in Presidio's BB capacitors in internal memoranda, and reported that information to upper management. Charged with knowledge of their own patents, including that the '791 patent claims capacitors with vias, and with undisputed knowledge that Presidio's BB capacitors incorporated the claimed vias, Plaintiffs chose to not sue Presidio for more than twelve years. Plaintiffs' deliberate choice to not accuse Presidio of patent infringement constitutes a waiver of their right to do so.

B.     The Jury's General Verdict

After hearing from both of Plaintiffs' technical experts, Plaintiffs' corporate representative, and Presidio's technical expert, that the '547 patent specification and claims do not provide sufficient information to determine whether products have "terminations extending…negligibly over the top surface," the Court instructed the jury on the law, to be applied by the jury to the facts. The jury was explicitly charged with this duty: "It is your duty to accept these instructions of law and apply them to the facts as you determine them." (Dkt. 191, at 2; *see also* Dkt. 191, at 22-23: "You must accept my definitions of these words in the claims as being correct. It is your job to take these definitions and apply them to the issues you are deciding…"). The Court's instructions required the jury to consider the necessary legal principles given to it by the

2

Court and make a determination of liability. *Id.* In addition, the jury was repeatedly charged with finding in favor of either Plaintiffs or Presidio, and the jury did so. (Dkt. 191-1, at 1, 3, 5, 6) ("Checking 'Yes' below indicates a finding for Plaintiffs ATC and AVX. Checking 'No' below indicates a finding for Defendant Presidio.")

As such, the jury was instructed to apply the law as provided by the Court, the hallmark of a general verdict. *Anderson Group, LLC v. City of Saratoga Springs*, 805 F.3d 34, 33 fn.7 (2d Cir. 2015) (J. Matsumoto by designation) ("[I]t is evident that the jury verdict in this case was a general verdict because it asked the jury to 'apply legal principles and assign liability.'"); *Lavoie v. Pacific Press & Shear Co.*, 975 F.2d 48, 54 (2d Cir. 1992); *Black's Law Dictionary* at 1399 (5th ed. 1979) (defining general verdict as a verdict where the jury applies the law to the facts as distinguished from a special verdict where the jury finds only facts); *Jarvis v. Ford Motor Co.*, 283 F.3d 33, 56 (2d Cir. 2002) ("We have held, however, that where a jury is instructed to apply legal principles and assign liability, 'the answers to the questions submitted to the jury are not special verdicts…'") (emphasis added); *Manes v. Metro N.C. Railroad*, 801 F. Supp. 954, 958 fn. 1 (D. Conn. 1992) ("Specifically, the court instructed the jury to 'apply [the] law to the facts as you find them'…the court believes, is consistent with the definition of a general verdict."); *Function Media, LLC v. Google*, 708 F.3d 1310, 1328-29 (Fed. Cir. 2013) ("The theoretical distinction between general and special verdicts is that general verdicts require the jury to apply the law to facts, and therefore require legal instruction, whereas special verdicts compel the jury to focus exclusively on its fact finding role.").

In addition, the jury was tasked with finding in favor of either Plaintiffs or Presidio. (Dkt. 191-1, at 1, 3, 5, 6) ("Checking 'Yes' below indicates a finding for Plaintiffs ATC and AVX. Checking 'No' below indicates a finding for Defendant Presidio."). A jury does so through a general verdict. *Aczel v. Labonia*, 584 F.3d 52, 58 (2d Cir. 2009) (citing *Black's Law Dictionary* 1696-97 (9th ed. 2009) and "defining 'general verdict' as 'A verdict by which the jury finds in favor of one

3

party or the other…." as distinguished from a special verdict, wherein the jury only decides factual issues.).

Having heard testimony from experts for both Parties, and from Plaintiffs' corporate representative, the jury determined that the claim term "negligibly over the top surface of said device body" is indefinite. (Dkt. 201, at 8).

### III. ARGUMENT - THE '547 PATENT IS INDEFINITE

#### A. The Law Governing Indefiniteness

A patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014). Indefiniteness is a question of law, and is based on the Court's review of "the claims, the disclosure in the specification, and the discussion of [the relevant claim] term in the prosecution history…" *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1342 (Fed. Cir. 2015).

Post-*Nautilus*, it is no longer enough "to identify *some standard* for measuring the scope of the phrase" to preserve a patent's definiteness. *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1370–71 (Fed. Cir. 2014) (emphasis in original). For example, in *Dow Chem. Co. v. NOVA Chem. Corp.*, 803 F.3d 620 (Fed. Cir. 2015*)*, the Federal Circuit held the patent indefinite where the patent's intrinsic record did not disclose with reasonable certainty the particular method to be used for determining whether the claim term was satisfied, *i.e.*, the slope of strain hardening. The Federal Circuit held the patent indefinite despite the fact that Dow's expert, a person skilled in the art, articulated a method for determining whether the claim term was satisfied. *Id.* at 633. Also notable is that the parties agreed that it was possible to test for the

4

presence or absence of the claim term. *Id.* Still, the existence of "some method" was not enough; rather, "[u]nder *Nautilus* this is no longer sufficient…[T]he required guidance [as to what particular method to use] is not provided by the claims, specification, and prosecution history." *Id.* at 634.

      **B.    The Jury Correctly Found There Is No Reasonably Certain Standard For Determining What Constitutes A "Negligible" Amount Of Termination On The Top Surface**

The claims of the '547 patent require "terminations extending…negligibly over a top surface of said device body." (Exhibit 1, Trial Ex. 1, the '547 patent, at Claims 1 and 12). The Court defined this claim term as "a <u>small</u> amount of termination material is formed on a top surface of the device body." (Dkt. 79, at 22) (emphasis added). As explained below, and confirmed by the testimony of both of Plaintiffs' technical experts, Plaintiffs' corporate representative, and Presidio's technical expert, there is nothing in the '547 patent that informs a POSITA regarding the limit or scope of a "negligible" or "small" amount of termination material.

Courts have repeatedly held identical claim terms indefinite. *See e.g.*, *Intellectual Ventures LLC v. AT&T Mobility LLC*, Case No. 13-1668, 2016 U.S. Dist. LEXIS 107273, at *48-50 (D. Del. Aug. 12, 2016) (holding claims including "small" and "large" invalid as indefinite); *Innovative Display Tech. LLC v. Acer Inc.*, Case No. 2:13-CV-522, 2014 U.S. Dist. LEXIS 118422, at *74-75 (E.D. Tx. Aug. 26, 2014) (holding claim term "quite small" indefinite); *Storm Products, Inc. v. Ebonite Int'l., Inc.*, 638 F. Supp. 2d 1307, 1312-15 (D. Utah 2009) (holding claim terms "small number" and "large number" indefinite); *Guzik Tech. Enters., Inc. v. W. Dig. Corp.*, Case No. 11-CV-03786-PSG, 2013 U.S. Dist. LEXIS 101538, at *72 (N.D. Cal. July 19, 2013) (holding claim term "relatively short" indefinite).

5

Having heard testimony from experts for both Parties, and from Plaintiffs' corporate representative, that the '547 patent does not provide sufficient information for a POSITA to understand the scope of this claim term, the jury determined that it is indefinite. (Dkt. 201, at 8). And, there can be no mistake about the jury's decision – the jury requested clarification from the Court regarding this issue (Dkt. 196), and thereafter determined that "negligibly over a top surface" is indefinite, and was proven to be so by clear and convincing evidence. (Dkt. 201, at 8).

At trial, Dr. Randall testified that a POSITA does not know the scope of the terms "negligible" or "small" in the context of terminations extending over the top surface of the device body. (Exhibit 2, Trial Tr. Day 8, at 1817:10-15). That is because neither the '547 patent nor its prosecution history specifies any limitation for "negligible" or "small." *Id.* at 1817:21-1818:15. Decisively, Plaintiffs' expert conceded that the '547 patent does not specify a limitation for negligible or small in connection with any case size capacitor. (Exhibit 3, Trial Tr. Day 10, at 2256:10-24). It is hardly surprising then that the jury, having been repeatedly presented with expert testimony from both Parties that there is no limit to the scope of the claim term "extending…negligibly over a top surface" provided in the '547 patent, determined that there is no reasonably certain definition for that claim term and thus found it to be indefinite.

The jury also heard undisputed testimony that the skill and experience of a POSITA does <u>not</u> provide a reasonably certain definition for "negligible" and "small," thereby failing to provide the reasonable certainty that is absent from the '547 patent and its prosecution history. Dr. Randall testified that "negligible" and "small" are not terms of art in the capacitor industry, and that a POSITA is not aware of definitions of them based on skill and experience in the capacitor industry. (Exhibit 2, Trial Tr. Day 8, at 1816:24-1817:5). Plaintiffs' expert conceded

6

this fact at trial. (Exhibit 3, Trial Tr. Day 10, at 2255:22-2256:3). Thus, the skill and experience of a POSITA does not cure the failure of the '547 patent to provide sufficient information defining, or providing the limit or scope of, the claim term "extending…negligibly over a top surface of said device body."

There is additional evidence that the '547 patent claims are indefinite. For example, the Parties' experts agree that the '547 patent assigns solder creep as the sole cause of the claimed "negligible" or "small" amount of termination on the top. (Exhibit 4, Trial Tr. Day 7, at 1591:12-21). Solder creep is a unintentional by-product of the manufacturing process. (Exhibit 1, Trial Ex. 1, the '547 patent, at 3:9-11). With this background, the '547 patent describes the negligible amount of termination on the top of the device body as follows:

> The 'top' lands 32 and 34 are due to solder creep during the manufacturing process, and typically will not have a width exceeding 0.05 mm. As such, the top lands can generally be neglected.

*Id.*

During his deposition, when asked about the amount of variability allowed for the termination extending negligibly over a top surface of the device body, Plaintiffs' expert responded as follows:

> I don't think there's any information in the patent specification or claims that could tell me that.

(Exhibit 5, at 14:6-15) (emphasis added).

Presidio's Dr. Randall agrees with Plaintiffs' expert: a POSITA knows that solder creep varies from device to device, and therefore there is no defined dimension. (Exhibit 6, Dr. Randall Opening Report, at ¶ 594). Thus, both Parties' experts agree that what constitutes a "negligible" amount of termination is solely due to solder creep, and further agree that the

7

amount that constitutes a "negligible" termination changes from device to device, without limitation.

At trial, Plaintiffs' experts failed to present any evidence that would suggest the limit or scope of "extending…negligibly over a top surface of said device body." One expert repeatedly attempted to distinguish a "small" amount of termination from a "significant" amount of termination. (Exhibit 7, Trial Day 5, at 934:17-19; 935:11-19; 935:20-936:5; 936:6-15). However, he could not and did not offer an explanation of the difference between the two. *Id.* Emphasizing this fact is that he was not able to explain to the jury whether termination material was a "small" amount that would fall within the scope of this claim term, or whether it had extended to a point where it was a "significant" amount that would fall outside its scope. *Id.* at 934:17-19. Specifically, he was not able to differentiate between what constitutes a "small" amount of termination with what constitutes a "significant" amount of termination. *Id.* at 934:17-19; 935:11-19; 935:20-936:5; 936:6-15. No such explanation for determining what is, and what is not, a negligible or small amount of termination is provided in any materials related to the '547 patent, for example the specification, the claims, or prosecution history. (Exhibit 1, Trial Ex. 1, the '547 patent). This further demonstrates that "negligible" and "small" are indefinite. *GE Lighting Sols., LLC v. Lights of Am. Inc.*, 663 F. App'x 938, 940 (Fed. Cir. 2016) (holding "elongated" indefinite because skilled artisan cannot differentiate "elongated" from "non-elongated.").

Plaintiffs' experts' inability to explain the limit, much less a limit having reasonable certainty, for determining what constitutes a "negligible" or "small" amount of termination was confirmed by the trial the testimony of Plaintiffs' corporate representative, Mr. Ritter. Despite many decades of experience in capacitor design, Mr. Ritter testified that he is unable to explain

8

what constitutes a small amount of termination on the top of a capacitor, or what a negligible amount of termination is. (Exhibit 8, Trial Tr. Day 6, at 1304:10-18).

Making this claim term even more confusing is contradictory testimony and argument elicited from Plaintiffs and Plaintiffs' experts before trial. As noted above, the '547 patent provides that the top termination "typically will not have a width exceeding 0.05 mm." (Exhibit 1, Trial Exhibit 1, the '547 patent, at 3:9-11). When before the Patent Trial and Appeal Board ("PTAB"), Plaintiffs' counsel represented that this excerpt from the '547 patent shows "the upper limit of the negligible top-land termination. They can be smaller, but they cannot exceed 0.05 millimeters." (Exhibit 9, at 116:11-19).

Despite this unequivocal statement from the '547 patent itself, and Plaintiffs' counsel's representation to the PTAB regarding it, Plaintiffs' expert testified as follows:

> Since the 547 patent says it typically will not have a width exceeding .05 millimeters, it will typically not have a width exceeding .06 millimeters, .07 millimeters, all the way up to .1 millimeters, and probably is extremely likely not to have a dimension exceeding .1 millimeters, extremely likely to not have a dimension of .1 millimeters.

(Exhibit 10, at 42:6-19).

Plaintiffs' expert's testimony flies in the face of, and adds impenetrable confusion to, the '547 patent and its excerpt that the top termination "typically will not have a width exceeding 0.05 mm." It is also directly contrary to Plaintiffs' counsel's representation that this excerpt from the '547 patent shows that the top termination "cannot exceed 0.05 millimeters." Plaintiffs' expert's testimony is not only inconsistent with the '547 patent and Plaintiffs' counsel's representation – it also fails to provide any limit or scope to this claim term.

Perhaps even more problematic is that Plaintiffs' expert's testimony has repeatedly changed. After Plaintiffs' expert testified that (1) there is no information in the patent

9

specification or claims that provides how much termination material is no longer "negligible," and (2) the top termination is "extremely likely to not have a dimension of .1 millimeters," that same expert in a later expert report cited to an example in the '547 patent that purportedly results in a top termination that is 4.25 mils, more than twice the amount that he previously testified typically will not exist (.05 mm or 1.965 mils), and more than the amount that he previously testified was extremely unlikely (.1 mm or 3.93 mils).  To explain, after offering the testimony explained above, in a later report Plaintiffs' expert interpreted the '547 patent as allowing for a top termination that is 4.25 mils. (Exhibit 11, at ¶ 214).  This is directly contrary to his prior testimony that there is not <u>any</u> information in the patent <u>specification or claims</u> that defines the scope of this claim term, and is also contrary to his prior testimony that the top termination is extremely likely to not have a dimension of .1 millimeters (3.93 mils).

In addition, Plaintiffs' expert does <u>not</u> state that his interpretation would define the maximum amount of a "negligible" or "small" termination on the top.  *Id.*  In fact, Plaintiffs' expert conceded that his interpretation could not do so, because he conceded that a top termination of 4.25 mils could not apply to capacitors other than 0402 case size, for example an 0201 or and 0302 case size.  (Exhibit 12, at 190-192).

In sum, the jury was presented with ample evidence that the scope of the claim term "extending…negligibly over a top surface of said device body" is not reasonably certain. Testimony from both of Plaintiffs' technical experts, Plaintiffs' corporate representative, and Presidio's technical expert all demonstrate that this claim term has no limitation, and is indefinite.  Accordingly, Presidio respectfully requests that the Court find that the scope of the claim term "terminations extending…negligibly over a top surface of said device body" is not reasonably certain, and therefore indefinite, thus rendering all claims of the '547 patent invalid.

10

## IV.  ARGUMENT - PLAINTIFFS KNOWINGLY WAIVED THEIR RIGHT TO SUE PRESIDIO FOR INFRINGEMENT OF THE '791 PATENT

It was not by mere negligence or oversight that Plaintiffs did not sue Presidio for infringement of the '791 patent for more than 12 years after becoming aware of and analyzing Presidio's BB capacitors. Rather, Plaintiffs analyzed Presidio's BB capacitors starting in 2002 and continuing over the course of many years, determined that those products were covered by Plaintiffs' patents, and then made a deliberate choice, dictated by corporate policy, not to sue.

There is no dispute that, as early as 2002, Plaintiffs acquired and analyzed Presidio's BB capacitors. (Exhibit 13). In connection with Plaintiffs' analysis of Presidio's BB capacitors, Plaintiffs determined that those products included the vias that are claimed in the '791 patent. By way of example only, Plaintiffs' engineers sketched Presidio's "Conductive Via Holes" in their engineering notes. (Exhibit 14, Trial Exhibit EW; Exhibit 15, Trial Tr. Day 2, at 394:16-395:12). Plaintiffs were aware that Presidio's BB capacitors incorporated the vias claimed in the '791 patent no later than 2002. (Exhibit 15, Trial Day 2, at 396:3-13). And, Plaintiffs repeatedly reported this fact to other engineers, as well as to Plaintiffs' upper management, both in the United States and Europe. (Exhibit 15, Trial Day 2, at 396:3-13; Exhibit 16 (excerpts of Trial Exhibit ER)). Indeed, Plaintiffs prepared slide presentations for internal use, as well as for presentations to its customers, that Presidio's BB capacitors included vias. (Exhibit 16, Excerpts of Trial Exhibit ER, at 1, 8).

That Presidio's BB capacitors incorporated the vias claimed in the '791 patent was no surprise to Plaintiffs. Plaintiffs had already searched for and located Presidio's "Buried Broadband Capacitor" patents, and knew that those patents described capacitors with vias. (Exhibit 17, Trial Exhibit FA, at 2).

Thus, Plaintiffs are charged with and in fact had full knowledge of Presidio's BB capacitors and their internal structures. Plaintiffs were fully aware of those products, including the fact that they incorporated the vias that are claimed in the '791 patent.

After this detailed analysis of Presidio's BB capacitors, Plaintiffs identified that Presidio "use[s] our patented BMC configuration" (Exhibit 18), and "[n]otice[d] that Rich Monsorno's BMC structure is used" by Presidio's BB capacitors (Exhibit 19). After once again identifying the "Via holes" in Presidio's BB capacitors, the same products accused of infringement, Plaintiffs formed a belief and determined that "[t]his is covered in the Monsorno patent." (Exhibit 19, at 2). Plaintiffs formed the belief that Presidio's BB capacitor is "covered in the Monsorno patent" (a.k.a. infringes the Monsorno patent) more than a decade before they filed suit. *Id.*

Notably, the '791 patent is the only Monsorno patent that claims vias. (Exhibit 20, Trial Exhibit 2, the '791 patent and listing Monsorno as the named inventor). Thus, Plaintiffs' repeated analysis of Presidio's BB capacitors and determination that those products incorporate the vias claimed in the '791 patent could only refer to the '791 patent.

In addition, the '791 patent describes a "BMC" capacitor as a capacitor with a "buried" electrode. *Id.* at 2:34-36. And, the '791 patent describes *itself* as one such BMC capacitor by noting in the "Objects and Summary of the Invention" that "[a]nother object of the present invention is further to increase resonance frequency of capacitors having <u>buried electrodes</u>…". *Id.* at 1:26-29. And, the '791 patent refers to this BMC structure in describing the "Preferred Embodiments." *Id.* at 2:34-36.

There is also no dispute that the claims of the '791 patent require a buried electrode, and thereby claim a BMC capacitor. *Id.* at 4:33-48 (claiming a first electrode layer with dielectric

12

layers on both sides and forming a margin around it). In the specification itself, the '791 patent also describes a preferred embodiment as having a "first electrode layer 1 [that] is surrounded and literally buried in ceramic." *Id.* at 3:4-5. The Abstract also emphasizes this point, noting that the invention of the '791 patent relates to "[a] monolithic capacitor chip [that] includes a first electrode layer enclosed in a ceramic which comprises a ceramic layer." *Id.* at Abstract.

Despite having full knowledge of Presidio's BB capacitors, including the vias claimed in the '791 patent, and despite concluding that the Presidio BB capacitors are covered by a Monsorno BMC patent, which includes the '791 patent, Plaintiffs chose not to sue Presidio. Plaintiffs did not have a product that competed with Presidio's BB capacitors. (Exhibit 15, Trial Tr. Day 2, at 416:8-23). In fact, it took many years after Plaintiffs analyzed Presidio's BB capacitors to bring a competing product to market. *Id.* And, Plaintiffs were not able to do so until after they emulated Presidio's BB capacitor. (Exhibit 21, Trial Exhibit DT).

Subsequently, in 2007, Presidio sued Plaintiff ATC in California for patent infringement ("*Presidio I*"), in which the Presidio BB capacitors played a critical role. (Exhibit 22). In *Presidio I*, Plaintiffs' Vice President testified that Plaintiffs believed that Presidio's products infringed multiple Monsorno BMC patent<u>s</u>. (Exhibit 23, at 26:14-22) (emphasis added). Plaintiffs decided not to file suit because of Plaintiffs' intellectual property "policy." *Id.* Once again, at that time, Plaintiffs acknowledged their full knowledge that Presidio's BB capacitors "actually infringes our Monsorno BMC patent<u>s</u> and we've never filed suit." *Id.* (emphasis added).

None of these actions by Plaintiffs are merely the result of negligence or oversight. Rather, Plaintiffs voluntarily and intentionally undertook these actions. Specifically, Plaintiffs intentionally acquired and analyzed Presidio's BB capacitors. Plaintiffs also repeatedly

13

identified and noted that the vias claimed in the '791 patent are incorporated in Presidio's BB capacitors. And, Plaintiffs did not just report these facts to upper management. (Exhibit 15, at 416:18-20). Plaintiffs also made a concerted analysis and decision that Presidio's BB capacitors were covered by the Monsorno patents. Plaintiffs, at all levels, including engineering, upper management, and even at the Vice President level, had actual knowledge of the infringement of the Monsorno patents by the same products that, more than a decade later, became the subject of this lawsuit. Still, Plaintiffs chose not to sue because they did not have a competing product, and abided by their corporate "policy" of not pursuing patent infringement claims. Plaintiffs chose not to sue even in view of their belief of infringement by Presidio's BB capacitor, a calculated and deliberate strategy.

     Thus, Plaintiffs waived their right to sue Presidio for patent infringement. In view of Plaintiffs' belief of Presidio's infringement, Plaintiffs made a deliberate decision to follow their corporate policy of not suing for patent infringement. Each of these facts supports a finding of waiver, because they demonstrate that Plaintiffs, with full knowledge of Presidio's BB capacitors and their incorporation of the vias claimed in the '791 patent, chose to follow corporate policy and not sue Presidio for infringement. *Qualcomm, Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1020 (Fed. Cir. 2008) ("In order to prove waiver, Broadcom must show by clear and convincing evidence either that Qualcomm, with full knowledge of the material facts, intentionally relinquished its rights to enforce the…patents [at issue] or that its conduct was so inconsistent with an intent to enforce its rights as to induce a reasonable belief that such right has been relinquished."); *Hudson River Sloop Clearwater, Inc. v. Dept. of the Navy*, Case No. CV-86-3292, 1989 U.S. Dist. LEXIS 19034, at *21 (E.D.N.Y. May 1, 1989) ("Waiver is an intentional relinquishment of a known right…not created by negligence, oversight, or thoughtlessness");

*J&J Sports Productions, Inc. v. Catano*, Case No. 12-cv-739, 2012 U.S. Dist. LEXIS 159876, at *9 (E.D. Cal. Nov. 6, 2012) ("Waiver is an 'intentional relinquishment or abandonment of a known right.'").

V.   **CONCLUSION**

Based on the foregoing, Presidio requests that the Court adopt the jury's general verdict that the claim term in the '547 patent "negligibly over a top surface of said device body" is indefinite, thus rendering all claims of the '547 patent invalid. In addition, Presidio moves for a finding that Plaintiffs waived their right to sue for infringement of the '791 patent.

Dated: July 19, 2019

WOOD, HERRON & EVANS, L.L.P.

By:  /s/ Brett A. Schatz
     Gregory F. Ahrens, Esq.
     Brett A. Schatz, Esq.
     Wood, Herron & Evans, L.L.P.
     441 Vine Street, 2700 Carew Tower
     Cincinnati, Ohio 45202
     (513) 241-2324
     (513) 241-6234 (Facsimile)
     gahrens@whe-law.com
     bschatz@whe-law.com

Jeremy D. Richardson
Michelman & Robinson, LLP
800 Third Avenue, 24th Floor
New York, New York 10022
(212) 730-7700
(212) 730-7725 (Facsimile)
jrichardson@mrllp.com

Attorneys for Defendant
PRESIDIO COMPONENTS, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on July 19, 2019, the foregoing document was served in accordance with the Federal Rules of Civil Procedure, and/or the Eastern District's Local Rules, and/or the Eastern District's Rules on Electronic Service upon the following parties and participants:

<u>**Via Email**</u>
Timur E. Slonim, Esq.
Peter F. Snell, Esq.
Brad M. Scheller, Esq.
Vincent M. Ferraro, Esq.
Harold Steward Laidlaw
Mintz Levin Cohn Ferris Glovsky
 and Popeo, P.C.
666 Third Avenue
New York, NY 10017

Attorneys for Plaintiffs

<u>**Via Email**</u>
Ronald E. Cahill, Esq.
Heather Repicky, Esq.
Nutter McClennen & Fish LLP
Seaport West
155 Seaport Boulevard
Boston, MA 02210

Attorneys for Plaintiffs

/s/ Brett A. Schatz
Gregory F. Ahrens, Esq.
Brett A. Schatz, Esq.
Wood, Herron & Evans, L.L.P.
441 Vine Street, 2700 Carew Tower
Cincinnati, Ohio 45202
(513) 241-2324
(513) 241-6234 (Facsimile)
gahrens@whe-law.com
bschatz@whe-law.com

Jeremy D. Richardson
Michelman & Robinson, LLP
800 Third Avenue, 24th Floor
New York, New York 10022
(212) 730-7700
(212) 730-7725 (Facsimile)
jrichardson@mrllp.com

Attorneys for Defendant
PRESIDIO COMPONENTS, INC.