# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| AMERICAN TECHNICAL CERAMICS CORP. and AVX CORPORATION, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 2:14-cv-06544-KAM-GRB |
| vs. | ) ) | Judge Kiyo A. Matsumoto Magistrate Judge Gary R. Brown |
| PRESIDIO COMPONENTS, INC., | ) ) | |
| Defendant. | ) ) | |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S POST-TRIAL MOTION REGARDING INDEFINITENESS AND WAIVER

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ...................................................................................... 1

II.    THE COURT SHOULD DENY PRESIDIO'S MOTION REGARDING
INDEFINITENESS.................................................................................... 1

    A.    Relevant Legal Principles for Definiteness.............................................2

    B.    The Scope of "Negligibly Over A Top Surface" is Reasonably Certain to a Skilled
Artisan Reviewing the '547 Patent's Intrinsic Record ...........................3

          1.    The Claim Language Provides Explicit Guidance by Requiring a
"Substantially L-Shaped" Termination....................................... 3

          2.    The Specification Distinguishes Prior "U-Shaped" Terminations and
Provides Example Embodiments that Further Inform a Skilled Artisan
About the Scope of "Negligibly Over a Top Surface" .............. 5

          3.    The Prosecution History Distinguishes Prior L-Shaped Terminations with
No Material on the Top Surface of the Capacitor Body ............................ 5

          4.    Federal Circuit Precedent and the Jury's Infringement Verdict Support a
Finding of Definiteness Here ..................................................... 6

    C.    Presidio's Indefiniteness Challenge Ignores the Law and Relies on a
Compromised Advisory Jury ................................................................10

          1.    Presidio Gives Undue Weight to the Jury's Non-Binding Advisory
Determination that was Compromised by Presidio's Repeated Violations
of the Court's Orders ................................................................. 10

                a.    Presidio misstates that the jury advisory was a general verdict.....11

                b.    Presidio's trial misconduct compromised the jury's advisory
determination. ................................................................12

          2.    Presidio's Continued Insistence That "Negligibly Over a Top Surface"
Requires a Numerical Limit to Be Definite Fails ..................................... 16

          3.    Presidio's Alleged Evidence of Indefiniteness is Mischaracterized, Not
Relevant and Not Clear and Convincing .................................. 17

III.    THE COURT SHOULD DENY PRESIDIO'S MOTION REGARDING WAIVER...... 21

    A.    ATC Testimony Uniformly Establishes That There Was No Waiver ..................22

    B.    Presidio Wastes Judicial and Party Resources by Ignoring ATC's Testimony and
Misstating the Facts ................................................................................25

    C.    Presidio's Further Speculation is Not Evidence .................................................29

IV.    CONCLUSION.................................................................................................. 30

i

## TABLE OF EXHIBITS

| Attachments |
|---|
| Declaration of Peter F. Snell in Support of Plaintiffs' Memorandum of Law in Opposition to Defendant Presidio Components, Inc.'s Post-Trial Motion Regarding Indefiniteness and Waiver ("Snell Decl.") |

| Exhibit | Description |
|---|---|
| 1 | Excerpts from June 21, 2019 Trial Transcript |
| 2 | Excerpts from Trial Exhibit B |
| 3 | Excerpts from June 4, 2019 Pretrial Conference Transcript |
| 4 | Excerpts from June 10, 2019 Trial Transcript |
| 5 | Excerpts from June 11, 2019 Trial Transcript |
| 6 | Excerpts from June 13, 2019 Trial Transcript |
| 7 | Excerpts from June 14, 2019 Trial Transcript |
| 8 | Excerpts from June 18, 2019 Trial Transcript |
| 9 | Excerpts from June 20, 2019 Trial Transcript |
| 10 | Excerpts from May 18, 2016 *Inter Partes* Review ("IPR") Deposition Transcript of Dr. Stanley Shanfield in IPR2015-01332 |
| 11 | Excerpts from the March 15, 2017 Deposition Transcript of Mr. Andrew Ritter |
| 12 | Trial Exhibit 9 |
| 13 | Trial Exhibit 130 |
| 14 | Trial Exhibit EW |
| 15 | Excerpts from March 7, 2017 Deposition Transcript of Ms. Kathleen Kelly |

| Exhibit | Description |
|---|---|
| 16 | Excerpts from February 23, 2017 Deposition Transcript of Mr. Richard Monsorno |
| 17 | Trial Exhibit HY |
| 18 | Excerpts from June 12, 2019 Trial Transcript |
| 19 | Excerpts from June 17, 2019 Trial Transcript |
| 20 | Excerpts from the trial testimony of Mr. John Mruz in a prior matter, December 8, 2009 |
| 21 | Presidio's Exhibit 110 in the prior matter, i.e., an ATC email referring to U.S. Patent No. 5,576,926 ("the '926 Patent") |
| 22 | ATC's Exhibit BE in the prior matter, i.e., a copy of the '926 Patent |
| 23 | European counterpart patent corresponding to the '926 Patent |
| 24 | Oxford Dictionary of English Idioms, 3rd Ed., Oxford University Press, 2009, definition of "live and let live" |
| 25 | Excerpts from the trial testimony of Ms. Kathleen Kelly in the prior matter, December 8, 2009 |

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*3form, Inc. v. Lumicor, Inc.*,
678 F. App'x 1002 (Fed. Cir. 2017) ........................................................................8

*Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.*,
340 F.3d 1298 (Fed. Cir. 2003) ...............................................................................3

*BASF Corp. v. Johnson Matthey Inc.*,
875 F.3d 1360 (Fed. Cir. 2017) ..........................................................................7, 18

*Emmon v. Prospect Capital Corp.*,
675 F.3d 138 (2d Cir. 2011) ..................................................................................22

*Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp, LLC*,
879 F.3d 1332 (Fed. Cir. 2018) ...............................................................................7

*Guzik Tech. Enters., Inc. v. W. Dig. Corp.*,
No. 11-CV-03786-PSG, 2013 U.S. Dist. LEXIS 101538 (N.D. Cal. July 19,
2013) .......................................................................................................................9

*Hudson River Sloop Clearwater, Inc. v. Dep't of the Navy*,
No. CV-86-3292, 1989 U.S. Dist. LEXIS 19034 (E.D.N.Y. May 1, 1989) ...............22, 23, 26

*Innovative Display Techs. LLC v. Acer Inc.*,
No. 2:13-CV-522-JRG, 2014 U.S. Dist. LEXIS 118422 (E.D. Tex. Aug. 26,
2014) .......................................................................................................................9

*Intellectual Ventures I LLC v. AT&T Mobility LLC*,
No. 13-1668-LPS, 2016 U.S. Dist. LEXIS 107273 (D. Del. Aug. 12, 2016)
(Br. ) .......................................................................................................................9

*Kara Tech. Inc. v. Stamps.com Inc.*,
582 F.3d 1341 (Fed. Cir. 2009) .............................................................................19

*Liqwd, Inc. v. L'Oréal USA, Inc.*,
720 F. App'x 623 (Fed. Cir. 2018) .....................................................................8, 18

*Microsoft Corp. v. I4I Ltd. P'ship*,
564 U.S. 91 (2011) .................................................................................................3

*N. Telecom v. Datapoint*,
908 F.2d 931 (Fed. Cir. 1990) .................................................................................6

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
134 S. Ct. 2120 (2014) ...........................................................................................2

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
783 F.3d 1374 (Fed. Cir. 2015) ........................................................................3, 7, 8

*Phonometrics, Inc. v. Westin Hotel Co.*,
    350 F.3d 1242 (Fed. Cir. 2003)..................................................................22

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
    875 F.3d 1369 (Fed. Cir. 2017)..................................................................12

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
    No. 14-cv-02061-H-BGS, 2016 U.S. Dist. LEXIS 82532 (S.D. Cal. June 17,
    2016) ..........................................................................................................12

*Qualcomm Inc. v. Broadcom Corp.*,
    548 F.3d 1004 (Fed. Cir. 2008)............................................................21, 22

*SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*,
    137 S. Ct. 954 (2017)..................................................................................29

*SmithKline Beecham Corp. v. Apotex Corp.*,
    403 F.3d 1331 (Fed. Cir. 2005).....................................................................7

*Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*,
    844 F.3d 1370 (Fed. Cir. 2017)..................................................................6, 8

*Storm Prods., Inc. v. Ebonite Int'l, Inc.*,
    638 F. Supp. 2d 1307 (D. Utah 2009)...........................................................9

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
    789 F.3d 1335 (Fed. Cir. 2015)..................................................................12

*Tinnus Enters., LLC v. Telebrands Corp.*,
    733 F. App'x 1011 (Fed. Cir. 2018) ..............................................................6

*United Access Techs., LLC v. AT&T Corp.*,
    757 F. App'x 960 (Fed. Cir. 2019) ................................................................8

**Federal Statutes**

35 U.S.C. § 112, ¶ 2 ..........................................................................................2

35 U.S.C. § 282 .................................................................................................3

35 U.S.C. § 286 ...............................................................................................29

**Rules**

Federal Rule of Civil Procedure 52(a)(1) .......................................................12

## I.      INTRODUCTION

Federal Circuit precedent clearly establishes that, in the context of the '547 Patent, the claim term "negligibly over a top surface of said device body" is definite, and neither Presidio's arguments nor the jury's non-binding advisory verdict—which Presidio purloined by repeatedly violating the Court's Orders at trial—can overturn the presumption of validity afforded to this patent.  Presidio likewise has failed to support its contention that ATC waived its right to assert the '791 Patent and instead misstates the record in bad faith.  The Court must deny Presidio's motion because Presidio cannot meet its burden of clear and convincing evidence on either issue.

## II.     THE COURT SHOULD DENY PRESIDIO'S MOTION REGARDING INDEFINITENESS

Presidio is wrong to argue that the claim term "negligibly over a top surface of said device body" in the '547 Patent is indefinite as a matter of law.  (Br. at 5.)[1]  The Patent Office twice understood this term—first in 2000 when it duly issued the '547 Patent and again in 2016 when it confirmed its patentability through *inter partes* review ("IPR").  This Court also (i) construed "negligibly over a top surface" to mean "a small amount of termination material is formed on a top surface of the device body," (ii) recognized its relationship to the claim term "substantially L-shaped," and (iii) rejected Presidio's indefiniteness arguments at summary judgment.  (Dkt. 79 at 21-22; Dkt. 126 at 40-44.)  The jury likewise advised that it understood the scope of the related term "substantially L-shaped" and readily applied the claims as a whole when concluding that Presidio's products infringe the '547 Patent.  (Dkt. 201.)  This is all because the '547 Patent's intrinsic record identifies the scope of the claims with reasonable certainty, including "negligibly over a top surface," just as Plaintiffs' validity expert, Dr. Stanley Shanfield, explained at trial.

---

[1] "Br." as used herein refers to Defendant Presidio Components Inc.'s Memorandum in Support of Post-Trial Motion Regarding Indefiniteness and Waiver.

(Ex. 1, 6/21/19 Trial Tr., 2217:9-2219:5.)

Presidio identifies no new relevant evidence and cannot meet its clear and convincing burden for indefiniteness.  Its opening brief instead

- mischaracterizes the evidence, or

- relies on new alleged evidence that was not part of the trial.

The Court should also reject Presidio's heavy reliance on the jury's advisory verdict because it is, by definition, non-binding and because Presidio procured it by intentionally confusing the jury at trial.

### A.    Relevant Legal Principles for Definiteness

Patents must "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention."  35 U.S.C. § 112, ¶ 2 (2012).  This clarity and precision demand is called "definiteness." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014).  It entails a delicate balance.

> On the one hand, the definiteness requirement must take into account the inherent limitations of language.  Some modicum of uncertainty . . . is the "price of ensuring the appropriate incentives for innovation." . . .  At the same time, a patent must be precise enough to afford clear notice of what is claimed, thereby "apprising the public of what is still open to them."

*Id.* at 2128-29.  Cognizant of these competing concerns, the Supreme Court articulated in *Nautilus* that "definiteness" requires patent claims, read in light of the specification and prosecution history, to inform a person of ordinary skill in the art ("POSITA") about the scope of the invention with ***reasonable certainty***.  *Id.* at 2124.  This standard "mandates clarity, while recognizing that absolute precision is unattainable," i.e., "the certainty which the law requires in patents is not greater than is reasonable, having regard to their subject-matter."  *Id.* at 2129 (citation omitted).

When the U.S. Patent Office issues a patent, definiteness has been considered and these tenets have been applied by examiners in the relevant art who are presumed to have done their jobs

correctly.  For this reason, every U.S. patent enjoys a statutory presumption of validity.  35 U.S.C. § 282 (2017).  Overcoming this presumption requires clear and convincing evidence that the Office erred.  *Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 95 (2011).

Patent claims using terms of degree—like "substantially," "negligibly" and "small"—are definite when context exists in the patent's intrinsic record to inform a POSITA of their scope with reasonable certainty.  As this Court explained during claim construction, "words of approximation, such as 'generally' or 'substantially,' are commonly used in patent claims to avoid strict numerical boundary to specific parameters."  (Dkt. 79 at 18 (citing *Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298, 1310-11 (Fed. Cir. 2003)).); *see also Nautilus, Inc. v. Biosig Instruments, Inc.*, 783 F.3d 1374, 1378 (Fed. Cir. 2015) ("Claim language employing terms of degree has long been found definite where it provided enough certainty to one of skill in the art when read in the context of the invention.").

**B.     The Scope of "Negligibly Over A Top Surface" is Reasonably Certain to a Skilled Artisan Reviewing the '547 Patent's Intrinsic Record**

The definiteness analysis—like claim construction—focuses on the language of the patent's claims, specification and prosecution history.  *Nautilus*, 783 F.3d at 1377-78.  Here, the '547 Patent intrinsic record informs a POSITA of the scope of "negligibly over a top surface" with reasonable certainty by clearly establishing that the claimed termination:  (i) must have termination material on the top of the capacitor body, (ii) must be "substantially L-shaped" and (iii) cannot be "U-shaped" with equal termination material on the top and bottom of the capacitor body.

**1.     The Claim Language Provides Explicit Guidance by Requiring a "Substantially L-Shaped" Termination**

The claim language itself provides a clear, objective baseline for a POSITA to understand the scope of "negligibly over a top surface"—namely, the portion of termination on the top surface must operate to make the termination as whole appear "substantially L-shaped"—as explained by

3

Plaintiffs' expert, Dr. Shanfield, at trial.  (Ex. 1, 6/21/19 Trial Tr., 2217:9-2218:13.)  Presidio indeed no longer challenges and thus concedes the definiteness of "substantially L-shaped" and thus that it provides an objective criteria for what is "negligibly over a top surface."

To explain, the '547 Patent claims all recite that the "substantially L-shaped terminations" extend "negligibly over [or on] a top surface" of the capacitor body.  (Br., Ex. 1 at 6:12-18, 6:62-7:8.)  Thus, "negligibly over a top surface" in the context of the claim language requires the claimed terminations to have material extending over the top of the capacitor body in a way that does not destroy the overall appearance of being "substantially L-shaped."  The Court explained this at claim construction:

> The claim already recites that the terminations must be 'substantially L-shaped,' which by its plain language describes the size relationship between the termination portions (i.e., one that creates the appearance of an 'L').  By definition, the top configuration must be smaller than the bottom configuration in order for the top termination portion to extend 'negligibly,' and for the terminations as a whole to appear 'substantially L-shaped.'

(Dkt. 79 at 22.)  Indeed, because the intrinsic record is clear on this issue, the Court rejected Presidio's request for further clarification—"The court finds that the clarification offered through Presidio's proposed construction is not necessary to construe the disputed claim." (*Id*. at 21-22.)

The Court had no uncertainty in construing both terms: (i) "substantially L-shaped termination" meaning "substantially or largely L-shaped, but not wholly L-shaped"; and (ii) "negligibly over a top surface" meaning that "a small amount of termination material is formed on a top surface of the device body." (*Id*. at 20-22.)  The Court also aptly noted that its (and the Patent Office's) capacity to construe these terms renders Presidio's allegation of indefiniteness suspect, and Presidio's motion does not even attempt to fill this hole:

> Although the *inter partes* review challenge focused on the challenged claims' alleged obviousness, the PTAB's opinion necessarily involved construction and application of the terms "substantially L-shaped" and "negligibly over the top surface."  This court also previously construed these terms in its claim construction

order.  Defendant [Presidio] does not explain how the court and PTAB were both able to construe these terms, yet any reasonable finder of fact must conclude that they are indefinite on a clear and convincing evidence standard.

(Dkt. 126 at 43 (citations omitted).)

### 2.   The Specification Distinguishes Prior "U-Shaped" Terminations and Provides Example Embodiments that Further Inform a Skilled Artisan About the Scope of "Negligibly Over a Top Surface"

The '547 Patent's specification provides further context about the claim scope because it teaches a POSITA that "substantially L-shaped terminations" with portions extending "negligibly over the top surface" of the capacitor body are different from "U-shaped" terminations having top and bottom termination portions of equal extent.  (Br., Ex. 1 at 3:43-54, 4:29-27, Figs. 3-4.)  For example, the '547 Patent states that a capacitor in case size 0402 can be manufactured purposefully such that it has a lesser extent of termination on the top than it does on the bottom, in contrast to U-shaped terminations that are manufactured to have the same extent on the bottom and top:

> *For example*, capacitors produced in 0402 size according to the present invention may have *"bottom" lands* with a nominal width of about 0.20 mm (typically 0.20±0.10 mm). In such a structure, the "bottom" lands may be separated by a *nominal gap of about 0.35 mm or more*, with the *negligible "top" lands* having a *nominal gap of at least about 0.85 mm* (typically 0.80 to 1.05 mm). This is in comparison to prior art components of the same size, where the land width [on both the top and bottom] may nominally be about 0.25 mm with a nominal gap width of about 0.30 mm.

(*Id.* at 5:43-52 (emphasis added).)

### 3.   The Prosecution History Distinguishes Prior L-Shaped Terminations with No Material on the Top Surface of the Capacitor Body

The '547 Patent's prosecution history also informs a POSITA of the scope of "negligibly over a top surface" because it distinguishes the L-shaped terminations of the Galvagni prior art. (Ex. 1, 6/21/19 Trial Tr., 2218:14-23.)  As a condition for allowance, *the Examiner* amended the claims to recite the term Presidio now disputes, finding that Galvagni "does not disclose a portion of the terminations negligibly over the top surface."  (Ex. 2, 6-7 ("Examiner's Amendment").)

The Federal Circuit has found that such examiner amendments favor definiteness and the same applies here. *Tinnus Enters., LLC v. Telebrands Corp.*, 733 F. App'x 1011, 1020 (Fed. Cir. 2018) ("We presume that an examiner would not introduce an indefinite term into a claim when he/she chooses to amend the claim for the very purpose of putting the application in a condition for allowance.") (citing *N. Telecom v. Datapoint*, 908 F.2d 931 (Fed. Cir. 1990) ("It is presumed that public officials do their assigned jobs.")); *Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1380-81 (Fed. Cir. 2017) ("application by the examiner and an expert . . . provide evidence that a skilled artisan did understand the scope of this invention with reasonable certainty").

\*      \*      \*

Accordingly, the '547 Patent's claims, specification and prosecution history inform a POSITA as to the scope of "negligibly over a top surface." Dr. Shanfield confirmed this at trial:

> Q   What in the patent itself, if anything, helps you understand this term with reasonable certainty?
>
> A   As I mention, there's the claim language and the fact that it talks about negligible amount and then some amount on the bottom surface. And that means you're forming an L-shape, and that there's a small amount now on the top surface. And that in combination with the examples in the specification, the pictures and a description, I think that would be enough. But then in the prosecution history, the examiner makes a distinction between L-shaped and . . . substantially L-shape with a small amount of material, negligible amount of material on the top surface, and so what you gather from that is that [it is not] an L-shape . . . and [not ] a U-shape . . . .

(Ex. 1, 6/21/19 Trial Tr., 2218:5-23.) A POSITA like Dr. Shanfield thus understands the scope of "negligibly over a top surface" with reasonable certainty based on the patent's intrinsic record.

### 4.   Federal Circuit Precedent and the Jury's Infringement Verdict Support a Finding of Definiteness Here

Federal Circuit case law supports the definiteness of "negligibly over a top surface." As an initial matter, "reasonable certainty" does not require "absolute or mathematical precision." *BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1365 (Fed. Cir. 2017). Indeed this Court has

noted that "words of approximation … are commonly used in patent claims *to avoid* strict numerical boundary to specific parameters" and correctly determined that "negligibly over a top surface" does not require a numerical limit.  (Dkt. 79 at 18 (emphasis added); Dkt. 179 at 10-12.) Nor does indefiniteness flow from the fact that the claims of the '547 Patent cover multiple configurations of "substantially L-shaped terminations" having a smaller extent of termination material on the top than on the bottom because "breadth is not indefiniteness."  *BASF*, 875 F.3d at 1367 (quoting *SmithKline Beecham Corp. v. Apotex Corp*., 403 F.3d 1331, 1341 (Fed. Cir. 2005)).

The Federal Circuit's opinion in *Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp, LLC*, 879 F.3d 1332 (Fed. Cir. 2018) is instructive.  Defendant contended that the patent failed to explain how to objectively determine whether a baffle portion is straight or long enough to be "elongated and substantially straight" and sought to impose a strict requirement on how straight the baffle must be.  *Id*. at 1344, 1346.  The Federal Circuit found that numerical precision was not required—"All that is required is some standard for measuring the term of degree [and] one skilled in the art would understand that the 'substantially straight' portions of the baffle must be sufficiently straight to connect two arcuate portions of the baffle."  *Id*. at 1346.  Here, as in *Exmark*, a POSITA would understand from the '547 Patent's intrinsic record that a termination extending "negligibly over a top surface" is defined by the objective criteria that the termination must be "substantially L-shaped"—not U-shaped or L-shaped with no material on top.  Presidio now concedes that "substantially L-shaped" is clear and the jury was readily able to apply this term.

Likewise, in *Nautilus*, the Federal Circuit held that the reasonable certainty of upper and lower bounds of the claimed "spaced relationship" of two electrodes rendered the claim definite because a POSITA "would be able to determine this language requires the spaced relationship to be neither infinitesimally small nor greater than the width of a user's hands":

> [T]he specification of the '753 patent does not specifically define "spaced relationship" with actual parameters, e.g., that the space between the live and common electrodes is one inch.  Nevertheless, the '753 patent's claim language, specification, and the figures illustrating the "spaced relationship" between the live and common electrodes are telling and provide sufficient clarity to skilled artisans as to the bounds of this disputed term.  For example, on the one hand, the distance between the live electrode and the common electrode cannot be greater than the width of a user's hands because claim 1 requires the live and common electrodes to independently detect electrical signals at two distinct points of a hand.  On the other hand, it is not feasible that the distance between the live and common electrodes be infinitesimally small, effectively merging the live and common electrodes into a single electrode with one detection point.

783 F.3d at 1382-1383.  Here, too, the extent of the top termination is bounded—the lower bound being greater than zero and the upper bound being less than the extent of the lower termination while providing a termination that is "substantially L-shaped."

Similarly, in *United Access Techs., LLC v. AT&T Corp.*, 757 F. App'x 960 (Fed. Cir. 2019), the Federal Circuit held that a claim need not have a numerical upper boundary to be definite:

> The fact that the upper limit of the term "high frequency" is not defined, however, does not render the term indefinite, at least where the purpose of the limitation is to distinguish between frequencies in a lower range and those in a higher range.  Since such a limitation does not contemplate an upper bound beyond what is practically required (e.g., the total percentage must be less than 100%), the limitation may not present definiteness concerns.  The intrinsic evidence defines the lower limit of the high frequency band and thus makes the meaning of the term reasonably clear; the fact that the claim language, at least in theory, covers any frequency higher than that does not render the claim language indefinite, even though the use of very high frequencies would be impractical.

*Id*. at 970-71.  Accordingly, that the '547 Patent claims cover an extent of termination over the top surface that is smaller than the bottom portion while requiring that the termination as a whole remain "substantially L-shaped" renders the claims definite.[2]  The definiteness of "negligibly over

_____

[2] *See also*, *e.g.*, *Sonix*, 844 F.3d at 1379-1381 (holding "visually negligible" definite);  *Liqwd, Inc. v. L'Oréal USA, Inc.*, 720 F. App'x 623, 630 (Fed. Cir. 2018) ("Indefiniteness does not necessarily follow from a claim's reliance on visual inspection with the human eye"); *3form, Inc. v. Lumicor, Inc.*, 678 F. App'x 1002, 1008 (Fed. Cir. 2017) (upholding "substantially natural appearing conformation" as definite).

a top surface" is supported by (i) the jury's ability to conclude that Presidio's accused products infringe the claims of the '547 Patent and (ii) Presidio no longer disputing the definiteness of the related claim language "substantially L-shaped" and the jury's advisory verdict that it is definite. (Dkt. 201 at 7-8.)  Since "substantially L-shaped termination" is definite, it stands to reason that "negligibly over a top surface" which is objectively grounded by that language is definite as well.

   Presidio's "small" and "large" cases are inapposite.  (Br. at 5.)  Each one involved "small" and "large" terms accompanied by indefinite qualifiers ("relatively large," "relatively small," "quite small" "relatively short") that were ***not*** explained in the intrinsic record—unlike the '547 Patent where as explained above "negligibly over a top surface" is grounded by the related claim language "substantially L-shaped terminations" and the specification and prosecution history also set forth clear objective guideposts.  In *Intellectual Ventures I LLC v. AT&T Mobility LLC*, No. 13-1668-LPS, 2016 U.S. Dist. LEXIS 107273, at 49 (D. Del. Aug. 12, 2016) (Br. at 5), the court determined that "relatively large" contained no such qualification.  *Id.* at 49.  In *Storm Prods., Inc. v. Ebonite Int'l, Inc.*, 638 F. Supp. 2d 1307, 1309 (D. Utah 2009), the court determined that no standard existed for evaluating "a relatively small number of bowling balls," nor was any evidence identified by which a standard could be determined.  In *Innovative Display Techs. LLC v. Acer Inc.*, No. 2:13-CV-522-JRG, 2014 U.S. Dist. LEXIS 118422, at *72 (E.D. Tex. Aug. 26, 2014), the court determined that "neither the examiner nor the patentee provided any indication of the significance of the term 'quite small' or of the difference between 'quite small' and simply 'small,'" nor identified any objective criteria for evaluating this purely subjective term.  Lastly, in *Guzik Tech. Enters., Inc. v. W. Dig. Corp.*, No. 11-CV-03786-PSG, 2013 U.S. Dist. LEXIS 101538, at *72 (N.D. Cal. July 19, 2013), the court held that a "relatively short period of time" lacked an objective reference that was meaningfully limiting as a comparative measure.  None of

9

Presidio's cited cases resemble the record here.

**C.   Presidio's Indefiniteness Challenge Ignores the Law and Relies on a Compromised Advisory Jury**

Notwithstanding the '547 Patent's clear intrinsic record, unrefuted trial testimony of Dr. Shanfield, and Federal Circuit precedent, Presidio argues incorrectly that it presented clear and convincing evidence that the Patent Office made a mistake and that the claims are indefinite. ***First***, Presidio gives undue weight to the jury's non-binding determination on indefiniteness. Indefiniteness is a question of law for the Court, and the parties and the Court *agreed* before trial— a fact that Presidio now ignores—that the jury's determination on this issue would be advisory. It is also entitled to no weight because Presidio procured it by repeatedly violating the Court's orders.

***Second***, just as it did (impermissibly) at trial, Presidio continues to argue that "negligibly over a top surface" must have a specific numerical requirement to be definite.  (Br. at 5-10.)  In doing so, Presidio (i) fails to acknowledge that the law does not require "absolute or mathematical precision," (ii) ignores that the intrinsic record provides clear guideposts for understanding the scope of "negligibly over a top surface" by distinguishing the claimed terminations from "U-shaped" terminations and the "L-shaped terminations" of Galvagni having no material on the top surface and (iii) disregards the Court's orders that a numerical limit is not a required by the claims.

***Third***, Presidio failed to produce clear and convincing evidence as to why a POSITA would not understand the scope of "negligibly over a top surface" with reasonable certainty, either through its own expert, Dr. Randall, or any other witness.

For these reasons, detailed below, Presidio has not met its heavy burden on indefiniteness.

**1.   Presidio Gives Undue Weight to the Jury's Non-Binding Advisory Determination that was Compromised by Presidio's Repeated Violations of the Court's Orders**

a.      **Presidio misstates that the jury advisory was a general verdict.**

As an initial matter, Presidio repeatedly misrepresents that the jury's advisory determination regarding "negligibly over a top surface" was a "general verdict."  (Br. at 1, 2-4, 15.)  Presidio previously agreed to and told the Court the opposite.  For example, at the pretrial conference, Presidio's counsel called the jury verdict on indefiniteness "advisory":

> MR. AHRENS:  I do have a question that comes to mind because of the defense of indefiniteness which is on the verdict for as an ***advisory verdict*** but it's still for the Court to decide.  That doesn't require -- we intend to just put the evidence in with the jury, but then your decision would only come after the advisory verdict, but you wouldn't need a separate proceeding for that; correct?
>
> THE COURT:  I do not think so.

(Ex. 3, Pretr. Conf. Tr., 14:11-21 (emphasis added).)

Presidio's counsel also did not dispute Plaintiffs' reference to the jury verdict on indefiniteness as advisory during trial:

> MR. SNELL: Sure.   I think the answer to all three questions is yes.   My understanding of the indefiniteness portion on the jury verdict form is that it's an ***advisory verdict*** for Your Honor and they can find separately yes or no on infringement and should fill out the full verdict form.  So I think the answer would be yes in our view on all three questions.
>
> THE COURT: Mr. Ahrens.
>
> MR. AHRENS: Yes, Your Honor . . . .

(Ex. 1, 6/21/19 Trial Tr., 2475:9-17 (emphasis added).)

In addition, after trial, the parties submitted a joint letter to the Court stating that "the jury has issued an ***advisory verdict*** on indefiniteness but the issue remains to be decided by the Court." (Dkt. 193 at 1 (emphasis added).)

Presidio now carefully avoids acknowledging that the jury was advisory in nature.  Presidio seeks to alter its representations to the Court about the respective roles of the judge and jury on indefiniteness but cannot do so because, as Presidio acknowledges, "[i]ndefiniteness is a question

of law, and is based on the Court's review of 'the claims, the disclosure in the specification, and the discussion of [the relevant claim] term in the prosecution history.'"  (Br. at 4 (quoting *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1342 (Fed. Cir. 2015)).)  Federal Rule of Civil Procedure 52(a)(1) also makes clear that in an "action tried on the facts . . . with an advisory jury, the court must find the facts specially and state its conclusions of law separately."

Presidio is also no stranger to advisory jury verdicts on indefiniteness.  In the parties' prior litigation, Presidio similarly agreed to an advisory jury on indefiniteness.  Judge Huff explained that "the jury's advisory verdict [on indefiniteness] is not binding on the Court."  *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, No. 14-cv-02061-H-BGS, 2016 U.S. Dist. LEXIS 82532, at *24 (S.D. Cal. June 17, 2016) (citing *Am. Calcar, Inc. v. Am. Honda Motor Co.*, 651 F.3d 1318, 1333-34 (Fed. Cir. 2011)).  The Federal Circuit likewise noted that the jury had "issued an advisory verdict  as to indefiniteness . . ." and the same applies here.  *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1374 (Fed. Cir. 2017).

### b.    Presidio's trial misconduct compromised the jury's advisory determination.

Adding to the fact that the jury's advisory determination is non-binding on the Court, the Court should give the jury's advisory determination no weight because Presidio manufactured the result it sought by repeatedly misleading the jury about the meaning of "negligibly over a top surface"—conduct for which Presidio was admonished multiple times at trial.  As explained below, Presidio repeatedly (i) suggested that "negligibly over a top surface" means an amount that can be "neglected" or that has a numerical limitation and (ii) improperly objected during Plaintiffs' witness examination to provoke juror confusion.  This misconduct undoubtedly confused the jurors because it directly contravened the Court's claim construction and *in limine* orders that "negligibly over a top surface" means a "small amount of termination material is formed on the top surface"

with no numerical limit, and is related to and grounded by the definite claim term "substantially L-shaped terminations."  (Dkt. 79 at 21; Dkt. 179 at 10-12.)[3]

Starting with its opening statement, Presidio stated that "negligibly over a top surface" means an amount that can be "neglected" and is "not important":

> [MR. AHRENS:]  So as I'm holding ZU.6 in front of you, the top of is oriented up like the orientation I'm holding it.  So one end of the other would look like an L to you assuming it's this end.  And so, there is a little bit on top but it's negligible according to the patent claim.  So you will be asked to decide when is something negligible.
>
> So think about negligible and, you know, when you neglect something it's not really important.  And when you're doing that, think about the substantial amount of termination  material on all five sides forming this cup with a little bit of an extension of this external electrode.  Whether you are convinced that this forms an L, which I don't believe you should based on the evidence, is the termination material  that's on the top surface in this product.  That would be this.  Is that something to be neglected?

(Ex. 4, 6/10/19 Trial Tr., 168:5-19.)  The Court later warned Presidio about "twisting" the claim construction in front of the jury but the initial damage had been done:

> MR. SNELL: …   There was discussion yesterday in Presidio's opening about The '547 Patent and the term "negligibly over a top surface."  Your Honor has construed that at Docket 79, at pages 21 and 22.  And it means, quote, A small amount of termination material is formed on a top surface of the device body.  In Presidio's opening yesterday, there was an effort that appears to be made to reconstrue the term. . . .
>
> THE COURT:  I agree. I was surprised to hear that; but, again, they are going to get the instruction on the claim construction. ***I think the defendant should avoid twisting  'negligibly over the top surface' to imply neglectful behavior or neglect. It just isn't even close***, so.

(Ex. 5, 6/11/19 Trial Tr., 228:23–229:24 (emphasis added); *see also id*. at 229:25-230:13.)

---

[3] The Court rejected Presidio's attempt to import specific limits into "negligible" and "small." (Dkt. 79 at 22 ("The court finds that the clarification offered through Presidio's proposed construction is not necessary…."); *see also* Dkt. 179 at 10-11 ("***The court rules that no expert may testify to measurable limitations of termination material on the top surface, as the court has declined to read a numerical limit*** into the term "negligibly over a top surface.").)

Notwithstanding this admonishment, Presidio continued to violate the Court's Orders during examination of Plaintiffs' expert, Dr. Hillman.  Presidio continued to twist the meaning of "negligible" by repeatedly suggesting it has a numerical limit that must be measured:

> [MR. SCHATZ:]  So again, Dr. Hillman, in the specification of the '547 Patent there is a discussion that the top lands typically will not exceed less than 2 mils, right?
>
> MR. SNELL: ***Objection, per the court's in limine order [Dkt. 179 at 10-11]***….

(Ex. 6, 6/13/19 Trial Tr., 865:17-21 (emphasis added); *id*. at 866:2-869:23 (sidebar).)

> [MR. SCHATZ:]  Okay.  And ***you did not measure*** – use that scale to measure the top amount of termination in this Presidio BB capacitor, did you?
>
> MR. SNELL: Objection, Your Honor.  It's the exact issue we just discussed.
>
> THE COURT: All right.  ***Sustained***.

(*Id*. at 871:21-872:1 (emphasis added).)

> [MR. SCHATZ:]  Okay. Did you -- but ***you didn't measure*** a single top termination on a Presidio capacitor, did you?
>
> MR. SNELL: Objection, Your Honor.
>
> THE COURT: ***Sustained***.

(*Id*. at 873:7-10 (emphasis added).)

> [MR. SCHATZ:]  You will agree with me you used the term "significant amount." If it is a significant amount, then it's not negligible, correct?
>
> MR. SNELL:  Objection, Your Honor.  Calls for a legal conclusion, claim construction.
>
> THE COURT: I think it would be best not to have the witness testify about a claim that has been or language that has been construed in terms of comparing that construction to some other term.  So I would sustain or ask you to rephrase in some other way.

(Ex. 7, 6/14/19 Trial Tr., 934:22-935:7.)

> [MR. SCHATZ:]  Okay. So ***you didn't record any actual measurements*** that you took of any Presidio BB capacitors regarding the top termination, correct?
>
> [DR. HILLMAN:]  Again, to the best of my recollection, I do not believe it is in

14

the report, correct.

THE COURT: ***Mr. Schatz, he was asked and answered that at least twice before, and it exceeds the scope of the redirect.  I'm hoping you are going to move on*** and stick with whatever recross you have in the confines of the redirect. . . .

[MR. SCHATZ:]  So you used a combination of criteria: The ***absolute amount of termination*** on the top and also the relative amount of the termination of the top relative to the termination on the bottom, correct, that was your criteria?

MR. SNELL: Objection, asked and answered.

THE COURT: Yes, and ***I don't think you heard what I just said***.

(*Id.* at 943:7-25 (emphasis added).)

Presidio did not stop there.  It continued to suggest that "negligibly over the top surface" has a numerical limit during examination of its own expert, Dr. Randall.  This forced the Court to issue a curative jury instruction on the spot to try to minimize the additional damage.  (Ex. 8, 6/18/19 Trial Tr., 1593:22-1605:12.)  Remarkably, even this did not deter Presidio.  Presidio continued to suggest to the jury that "negligibly over a top surface" has a numerical limit, again requiring Court intervention.  (Ex. 9, 6/20/19 Trial Tr., 1984:6–22 (sustaining objection).)

Presidio continued its effort to confuse the jury by next strategically interrupting the direct examination of Plaintiffs' expert, Dr. Shanfield, with an objection directly contrary to the Court's claim construction order.  Presidio's counsel misrepresented to the Court at side bar that the Court's claim construction order precludes an expert from discussing "negligibly over a top surface" with reference to other structures (comparing the extent of top and bottom terminations):

[MR. SCHATZ:]  . . . Your Honor's claim construction order does not at all say anything more relative to any other type of structure and so to try to further define what negligible means in the context of another shape is improper and violates the Court's order.

THE COURT: Well, did I order that it couldn't be done, that it couldn't compare? Because I think that there was a lot of testimony from Dr. Randall comparing the amount of termination material of the top and the bottom, it's substantial, it's almost the same, there was a lot of that.  So, I don't believe that I restricted the parties from

describing the negligible amount of termination material in reference to other structures or other termination structures.

(Ex. 1, 6/21/19 Trial Tr., 2192:2-2193:22.)   At a subsequent side bar, the Court uncovered

Presidio's misrepresentation.   As the Court stated, the Court's order specifically refers to and

allows for a "relational analysis" between top and bottom terminations:

> THE COURT: All right. May I just make one point? Because the clerk just pulled the claim construction order on negligibly over the top surface. . . . And I know that both parties agreed that the definition regarding the negligibly over the top surface meant a small amount of termination material formed on a top surface of the device body, but the defense then argued that additional construction was necessary to clarify the amount must be small in relation to the termination material extending over the bottom surface of the capacitor device body.  And I was quoting from the defense's brief. ***You had argued for the relationship.*** And then I noted that the defense proposed instruction was not necessary to construe the disputed claim.  And also noted that the claim already recites that the terminations must be substantially L-shaped, which by its plain language describes the size relationship between the termination portions; i.e., one that creates the appearances of an L.  And then I went on to say: ***By definition, the top configuration must be smaller than the bottom configuration in order for the top termination portion to extend negligibly, and for the termination as a whole to appear substantially L-shaped.***  And that in conclusion said that I construe the claim negligibly over the top surface to mean a small amount  of termination material formed on a top surface of a device bodies. ***So I recognized that it was a relational analysis***, although I didn't accept that that construction had to be placed into the construction, but did not bar it, per se.

(Ex. 1, 6/21/19 Trial Tr., 2213:17–2214:25 (emphasis added).)  Presidio's counsel was forced to

"agree completely" but again the damage was done—another distraction in front of the jury.  (*Id*.)

There is thus little doubt that Presidio's trial tactics were intentionally designed to, and did,

confuse the jury about "negligibly over a top surface."  Presidio's repeated mischaracterization of

this claim term in violation of the Court's claim construction and *in limine* Orders explains the

jury's confusion on its meaning and its resulting advisory on indefiniteness.  The jury's advisory

verdict is non-binding on the Court, and the Court in its discretion should afford it no weight.

### 2.   Presidio's Continued Insistence That "Negligibly Over a Top Surface" Requires a Numerical Limit to Be Definite Fails

Presidio's continuing argument that "negligibly over a top surface" must have a numerical

limit to be definite fails.  For example, Presidio attempts to fault the '547 Patent for not claiming in independent claims 1 and 12 the *example* from the patent's specification that the top termination material need not have a width exceeding "0.05 mm."  (Br. at 7.)  Presidio also argues that the claims are indefinite because they do not claim a specific "amount of variability."  (*Id*.)  In a like vein, Presidio argues that the claims are indefinite because they do not recite "the limit . . . ."  (*Id*. at 8.)  That is not the law.  As explained *supra* at 3-9, the '547 Patent's intrinsic record—including the claims, specification, and prosecution history—define the scope of this claim term with reasonable certainty and the Federal Circuit has repeatedly found similar claims definite.  This Court has correctly decided in this case that the claims do not include a strict numerical limit and none is required for definiteness.

### 3.  Presidio's Alleged Evidence of Indefiniteness is Mischaracterized, Not Relevant and Not Clear and Convincing

Presidio's final attempt—its reliance on scattershot testimony combined with additional evidence not introduced at trial[4]—falls well short of establishing indefiniteness with clear and convincing evidence.  Nothing has changed; the evidence did not entitle Presidio to summary judgment of indefiniteness and does not support a finding of indefiniteness now.

To start, Presidio's reliance on the testimony of its own expert, Dr. Randall, regarding the term "negligibly over a top surface" is insufficient to establish indefiniteness.  Rather than analyze the '547 Patent's intrinsic record and Dr. Shanfield's understanding of that record, Dr. Randall simply concluded that the '547 Patent does not "specify any numerical limitation."  (Br. at 6, citing

---

[4] Exhibits 5, 6, and 10-12 to Presidio's motion were not admitted at trial.  Exhibit 5 is an excerpt from Dr. Shanfield's IPR deposition.  Exhibit 6 is from Dr. Randall's expert report.  Exhibits 9 and 10 are transcripts from the IPR proceeding.  Exhibits 11 and 12 contain an expert report and prior deposition testimony from Dr. Shanfield.  Presidio's present use of non-trial evidence is contrary to Presidio's counsel's statement to the Court that "we intend to just put the evidence [for indefiniteness] in with the jury."  (Ex. 3, Pretr. Conf. Tr., 14:11-20.)

Br., Ex. 2.)  This testimony is misplaced, however, because the law does not require absolute or mathematical precision nor any numerical limit.  *BASF*, 875 F.3d at 1365.  Dr. Randall's conclusion that skilled artisans would not recognize "small," "negligible" or "negligibly over a top surface" as industry terms is also hollow because he again failed to analyze the patent's intrinsic evidence and the objective guideposts it provides.  (Br., Ex. 2.)  Dr. Randall's testimony thus cannot establish indefiniteness because it fails to address the central issue, i.e., whether a POSITA would understand the scope of the claims with reasonable certainty based on the patent's intrinsic record.  That Dr. Randall had no difficulty applying the term "negligibly over a top surface" in his infringement and prior art analyses, but allegedly could not do so when discussing whether the term is definite, also undermines Presidio's indefiniteness defense.  *Liqwd*, 720 F. App'x at 631 ("Such evidence of a challenger's own ability to apply a term without unreasonable uncertainty counts against an indefiniteness contention").

Presidio next relies on out-of-context testimony from Plaintiffs' witnesses.  For example, Presidio contends that Dr. Hillman "was not able to differentiate between what constitutes a 'small' amount of termination with what constitutes a 'significant' amount of termination."  (Br. at 8.)  But the term "significant" is not part of the '547 Patent's claims, and therefore the claims do not require any comparison or ability to differentiate between what is "small" or "significant."  In addition, in the testimony Presidio cites, Presidio's counsel presented Dr. Hillman with a hypothetical question by writing on an exhibit to alter the evidence.  Dr. Hillman simply responded that he takes "quite seriously" whether a capacitor is infringing and would need time to consider the new, hypothetical scenario Presidio posed on the spot.  (Ex. 7, 6/14/19 Trial Tr., 934:13-21.)

Presidio similarly mischaracterizes testimony from Plaintiffs' validity expert, Dr. Shanfield.  (Br. at 7, 9-10.)  Contrary to Presidio's contention, there is nothing confusing or

inconsistent with his testimony.  Dr. Shanfield *never* testified that "there is no information in the patent specification or claims that provides how much termination material is no longer 'negligible'" or that "there is not any information in the patent specification or claims that defines the scope of this claim term."  (Br. at 9-10.)  No such testimony exists and Presidio cites to none.

Presidio's reliance on Dr. Shanfield's testimony from his IPR deposition that "I don't think there's any information in the patent specification or claims that could tell me that" is also misleading.  (Br. at 7.)  Dr. Shanfield was discussing a specific example in the '547 Patent's specification having a top termination portion that "typically will not have a width exceeding 0.05 mm millimeters."  (Br., Ex. 1 at 3:9-12.)  Dr. Shanfield explained that the "0.05 mm" value for this example will typically have some variability.  And as Dr. Shanfield correctly noted, the fact that the '547 Patent's specification does not pinpoint the amount of variability for this particular example is irrelevant because this example does not define the scope of the claims:

> [DR. SHANFIELD:] *In the specification*, so lines 11, 12, 13, it says, "and typically will not have a width exceeding .05 millimeters."  That "typically" to me says that's the nominal value.  It's unlikely when I wrote in the report, "The 'top' lands in the embodiment 'do not have a width exceeding .05 millimeters,'" that was understood.  It isn't a categorical statement because someone of ordinary skill in the art would understand when you name a dimension there's *variability* possible, and it's a typical number of nominal value.
>
> Q Okay.  What is the amount of that variability for the width of the portions of said terminations extending negligibly over a top surface of the device body?
>
> MS. GLADSTEIN:· Objection.  Relevance.
>
> A *Yeah, I don't think it's a relevant question*.  I don't think there's any information in the patent specification or claims that could tell me that.  Since they assign it to a cause, which is the solder creep, it would be a matter of how much that phenomena changes from device to device.

(Ex. 10 at 13:19-14:9 (emphasis added).)  *See Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1347-48 (Fed. Cir. 2009) (examples in specification are not imported into claims).

19

Presidio's reliance on Dr. Shanfield's testimony that the top termination of a particular example in the patent's specification will "typically not have a width exceeding .06 millimeters, .07 millimeters, all the way up to .1 millimeters, and probably is extremely likely not to have a dimension exceeding .1 millimeters" is likewise misplaced. (Br. at 9-10.) Dr. Shanfield was again commenting on what an example in the patent's specification conveys, and examples do not define the scope of the claims. There is also nothing confusing or inconsistent with Dr. Shanfield's later testimony that the patent's specification also discloses other examples having a top termination that extends up to 4.25 mils. *Id.* In addition, Presidio's reliance on Dr. Shanfield's alleged "concession" that the patent does not assign a numerical limit to "negligible" or "small" (*id.* at 6) fails because the claims do not require a numerical limit to be definite.

Presidio's citation to a statement by Plaintiffs' counsel during the '547 Patent IPR hearing that "the upper limit of the negligible top land termination … cannot exceed 0.05 millimeters" also fails. (Br. at 9.) The Court has already rejected this argument from Presidio—both before claim construction (Dkt. 76 at 5-6) and at summary judgment (Dkt. 94-2 at 21)—and both times the Court correctly refused to import a numerical limit into the '547 Patent's claims. Plaintiffs' counsel was simply discussing an example in the '547 Patent's specification at column 3, lines 9-12, and said nothing that affects the scope or definiteness of the patent's claims.

Lastly, Presidio mischaracterizes the deposition testimony of Mr. Andrew Ritter when it asserts that "Mr. Ritter testified that he is unable to explain what constitutes a small amount of termination of the top of the capacitor, or what a negligible amount of termination is." (Br. at 8-9.) Mr. Ritter did not testify that he is unable to explain the scope of "negligibly on a top surface" in the '547 Patent. Mr. Ritter's testimony relates to the extent of termination on an Accu-P product and his general understanding of how dipped-end terminations are applied to capacitors. (Br., Ex.

8 at 1304:10-22.)  Mr. Ritter was not designated to testify about the meaning of the '547 Patent and had not analyzed the patent's intrinsic record before his deposition.  (*E.g.*, Ex. 11, 66:10-67:11.)

*   *   *

For all of the foregoing reasons, the Court should deny Presidio's motion on indefiniteness. None of Presidio's arguments overcome the '547 Patent's presumption of validity with clear and convincing evidence, and the Federal Circuit's clear guidance establishes that the '547 Patent's intrinsic record informs a POSITA about the scope of the claims with reasonable certainty.

## III.   THE COURT SHOULD DENY PRESIDIO'S MOTION REGARDING WAIVER

Presidio falls well short of demonstrating clear and convincing evidence of waiver and should not have brought its waiver motion.  Presidio's resort to repeated misstatements over its mere four pages of briefing on the issue indicates that even Presidio knows this.

Presidio cannot escape two truths.  ***First***, the testimony of every ATC witness at trial or by deposition in this matter establishes that no one did, nor could have, waived ATC's right to sue Presidio for infringement of the '791 Patent.  No ATC witness possessed the predicate knowledge for the Court to find—much less with clear and convincing evidence—that "with full knowledge of the material facts, [they] intentionally relinquished [ATC's] rights to enforce the ['791 Patent]." *Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1019-1020 (Fed. Cir. 2008).

***Second***, Presidio did nothing to meaningfully challenge ATC's testimony in this case.  For example, when former ATC engineer Mr. John Mruz testified at trial that he had no knowledge of the '791 Patent until 2017, Presidio had no answer.  Similarly, when Ms. Kathleen Kelly testified at her deposition that she was unaware of anyone at ATC ever determining whether Presidio infringed the '791 Patent, Presidio stood down.  Presidio never even sought to call her to testify live for the Court to assess her demeanor.  Presidio now ignores this testimony altogether because

21

it is fatal to its defense.  Presidio instead lays waste to judicial and party resources, continuing to press its alleged waiver defense by mischaracterizing ATC documents and a snippet of Ms. Kelly's testimony from a *different* trial.  Presidio's mischaracterizations, however, are not clear and convincing evidence of waiver.  Presidio has ignored its duty to self-police and withdraw its unmeritorious defense and its motion regarding waiver should be denied.  *See, e.g.*, *Phonometrics, Inc. v. Westin Hotel Co.*, 350 F.3d 1242, 1250 (Fed. Cir. 2003) (holding that party had "not merely the opportunity, but the obligation, to reconsider the viability of [its] claims in light of the evidence and refrain from further prosecution"); *Emmon v. Prospect Capital Corp.*, 675 F.3d 138, 146 (2d Cir. 2011) (holding that "[t]here was ample evidence that the motion as a whole contained 'persistent misrepresentations' and was made in bad faith").

### A.    ATC Testimony Uniformly Establishes That There Was No Waiver

ATC's testimony is central to the issue of waiver.  Indeed, waiver focuses exclusively on the intent of the patent owner.  *Hudson River Sloop Clearwater, Inc. v. Dep't of the Navy*, No. CV-86-3292, 1989 U.S. Dist. LEXIS 19034, at *21 (E.D.N.Y. May 1, 1989) ("Waiver is an intentional relinquishment of a known right and should not be lightly presumed.  It is essentially a matter of intent which must be proved.").[5]

Every current and former ATC employee that testified in this case—whether by deposition or at trial—testified in a manner fatal to Presidio's waiver defense.  To prove waiver, Presidio must show that ATC "***with full knowledge of the material facts***, intentionally relinquished [its] rights to enforce the ['791 Patent]."  *Qualcomm*, 548 F.3d at 1019-1020 (emphasis added).  This

---

[5] Presidio alleges that "Plaintiff*s*" waived the right to sue Presidio for infringement of the '791 Patent.  (*E.g.*, Br. at 11 (emphasis added).)  Only Plaintiff ATC owns the '791 Patent, however, and thus any alleged waiver—there was none—would have to come from ATC, not AVX.  Presidio's motion also fails to substantiate any allegation that AVX waived ATC's right to sue.

requires that at least one person at ATC had knowledge of *both* (i) ATC's '791 Patent and (ii) Presidio's Buried Broadband ("BB") capacitor in sufficient detail to conclude that the BB capacitor infringes the '791 Patent.  Only then would it even be possible for that person "with full knowledge of the material facts" to "intentionally relinquish[]" ATC's right to sue Presidio regarding the '791 Patent.  An allegation that someone at ATC "should have known" of Presidio's infringement of the '791 Patent is insufficient to demonstrate wavier because "[w]aiver . . . is not created by negligence, oversight, or thoughtlessness . . . and cannot be inferred from mere silence." *Hudson River*, 1989 U.S. Dist. LEXIS 19034, at *21.

None of ATC's witnesses possessed the predicate knowledge for waiver and thus could not have, and did not, waive ATC's right to sue Presidio for infringement of the '791 Patent.  For example, Presidio focuses its argument on documents of former ATC engineer, Mr. John Mruz. (Br., Exs. 13, 14, 16-19, 21.)  These documents show that Mr. Mruz knew in 2002-2004 about Presidio's BB capacitors and that they had vias.  Mr. Mruz readily acknowledged this at trial.  (Ex. 5, 6/11/19 Trial Tr., 339:6-344:14 (referencing Trial Ex. 9 at 24 and Trial Ex. 130) and 395:10-12 (referencing Trial Ex. EW at 1); Exs. 12, 13, 14 (Trial Exs. 9, 130, EW).)  He testified unequivocally, however, that he had no knowledge of the '791 Patent until his deposition in 2017 and thus had no reason to believe that Presidio was using the '791 Patent's technology:

> Q     John, did you have any reason to believe when you were at ATC that Presidio might be using, in some way, the technology of the '791 and '547 Patents?  . . . Did you have any reason to believe that, John? . . .
>
> A     No, I -- I didn't.
>
> Q     And so the best of your recollection did you even know about the '791 and '547 Patents when you were at ATC?
>
> A     No.

(Ex. 5, 6/11/19 Trial Tr., 351:18-352:12.)

> Q     So let me ask you, John, when was the first time you ever recall seeing the '791 Patent?

> A     That was -- that was at my deposition for this case, early 2017.
>
> Q     So your deposition in this lawsuit?
>
> A     Yes.
>
> Q     After you had already left ATC?
>
> A     Oh, yeah, I was well retired.

(*Id*. at 352:23-353:5.)

Presidio similarly relies on its mischaracterization of and speculation about testimony of Ms. Kathleen Kelly, ATC's former Vice President for Administration and Human Resources, from a *different* trial involving *different* patents.  (Br., Ex. 23; discussed *infra* at 29-30.)  But Presidio ignores Ms. Kelly's deposition testimony from this case where she was asked specifically about the '791 Patent and testified that she was unaware of anyone at ATC ever analyzing infringement of the '791 Patent before the date of this lawsuit.   (Ex. 15, 53:16-54:3.)  Ms. Kelly's testimony confirms that she could not have waived ATC's right to sue.

Ms. Kelly further testified that the only other person who had substantively reviewed ATC's file for the '791 Patent was the inventor, Mr. Richard Monsorno.  (*Id*. at 20:13-21, 26:24-29:13, and 33:2-36:2 (discussing ATC's internal process for the '791 Patent).)  And like Ms. Kelly, Mr. Monsorno did not possess the predicate knowledge for waiver, nor does Presidio even make such an assertion in its motion.  Mr. Monsorno testified that he had no knowledge of the Presidio products in this case and never analyzed them.  (Ex. 16, 111:17-112:13; *see also id*. at 51:11-52:14.)  Presidio has agreed that these facts are "<u>Not disputed</u>."  (Dkt. 117-1, 8-9.)

Mr. Victor Insetta, ATC's founder and President, similarly testified that during his time at ATC he was not familiar with Presidio's products.  (Ex. 5, 6/11/19 Trial Tr. 260:5-16; *id*. at 263:1-265:14 (referencing Trial Ex. HY); *id*. at 274:8-12; Ex. 17, Trial Ex. HY.)  Mr. Insetta did not even have a computer and did not monitor email at ATC, which explains why he has no knowledge of emails on which his purported email address was copied.  (Ex. 5, 6/11/19 Trial Tr. 280:11-282:1.)

Mr. Insetta testified that he had not seen the '791 Patent before it was shown to him at trial.  (*Id*. at 268:8-21 (referencing Trial Ex. 2, the '791 Patent).)

Accordingly, Presidio cannot establish waiver because testimony from all of ATC's witnesses in this case establishes that ATC did not waive its right to sue Presidio for infringement of the '791 Patent.  Simply put, Presidio cannot demonstrate with clear and convincing evidence that ATC did anything other than bring suit against Presidio in 2014 promptly after Mr. Evan Slavitt, ATC's Chief Legal Officer, Director, and Vice President, learned that Presidio was infringing the '791 Patent, just as Mr. Slavitt testified.  (Ex. 18, 6/12/19 Trial Tr. 565:8-566:11.) There could not have been waiver regarding the '791 Patent in 2002 or anytime thereafter because "the knowledge of the ['791] patent and the vias [in the BB capacitors] didn't come together in any one person [at ATC] until 2014," and thereafter ATC immediately filed suit.  (*Id*.)

## B. Presidio Wastes Judicial and Party Resources by Ignoring ATC's Testimony and Misstating the Facts

Presidio ignores the foregoing testimony of ATC's witnesses and presses its waiver defense in bad faith by offering a series of misstatements to feign the evidence it lacks.

***First***, Presidio repeatedly mischaracterizes the evidence when it states—***no less than seven times***—that one or more ATC employees knew about both ATC's '791 Patent and Presidio's BB capacitor and concluded that the BB capacitor infringes the '791 Patent.  Presidio repeatedly misstates that "Plaintiffs knew since 2002 that the vias claimed in the '791 patent were found in Presidio's Buried Broadband capacitors".  (Br. at 2.)[6]  Presidio's repeated misstatements are wrong

---

[6] *Id*. ("Plaintiffs' engineers . . . in fact determined at that early time that those products included the vias that are claimed in the '791 patent"); *id*. at 11 ("Plaintiffs determined that those products included the vias that are claimed in the '791 patent."); *id*. at 12 ("Plaintiffs were fully aware of those products, including the fact that they incorporated the vias that are claimed in the '791 patent."); *id*. at 13 ("having full knowledge of Presidio's BB capacitors, including the vias claimed in the '791 patent"); *id*. at 13-14 ("Plaintiffs also repeatedly identified and noted that the vias claimed in the '791 patent are incorporated in Presidio's BB capacitors."); *id*. at 14 ("Plaintiffs,

because, as explained above, none of ATC's witnesses possessed this knowledge. *Supra* at 22-24. Presidio in fact never challenged Mr. Mruz' testimony that he had no knowledge of the '791 Patent before this case.  In addition, Presidio's speculation that Mr. Mruz' former boss, Mr. Robert Grossbach, possessed some or all of the requisite knowledge for waiver is hopelessly deficient. (Br. at 2, 11, 14 (referring to alleged knowledge of "upper management"); Br., Ex. 16 at 1.) Presidio never deposed or examined Mr. Grossbach about his knowledge of the '791 Patent and the documents Presidio cites fall well short of demonstrating waiver.[7]

*Second*, Presidio relies on unsupported attorney argument, contrary to law, that ATC was somehow "charged" with knowledge that gives rise to waiver.  (Br. at 2 (arguing ATC was "[c]harged with knowledge of their own patents"), 12 (arguing ATC was "charged with . . . full knowledge of Presidio's BB capacitors and their internal structures")).)  This is equivalent to an argument that ATC waived its right to sue Presidio for infringement of the '791 Patent because someone at ATC "should have known" or "could have discovered" the infringement, which is incorrect because "[w]aiver . . . is not created by negligence, oversight, or thoughtlessness . . . and cannot be inferred from mere silence." *Hudson River*, 1989 U.S. Dist. LEXIS 19034, at *21.

*Third*, contrary to Presidio's argument, none of the ATC documents and testimony Presidio relies on demonstrate waiver.  Exhibit 13 to Presidio's motion establishes that ATC employees, including Messrs. Mruz and Grossbach, had knowledge of the BB capacitor, and Exhibits 14-16 further indicate that they knew the BB capacitor had vias.  Knowledge of vias in the BB capacitor,

with full knowledge of Presidio's BB capacitors and their incorporation of the vias claimed in the '791 patent").

[7] Even *assuming* that someone at ATC knew of the '791 Patent *and* that the BB capacitor included vias—there is no evidence of this—it would still not demonstrate waiver.  Claim 2 of the '791 Patent requires more than vias for infringement.  (Br., Ex. 20, 4:18-56.)  Presidio's motion is thus deficient for the additional reason that it fails to adduce any evidence that anyone at ATC had knowledge that the BB capacitor practices all elements of any claim of the '791 Patent.

however, is insufficient to prove waiver because it does not establish that they also knew of the '791 Patent *and* that the BB infringed it.  The information in these exhibits is also insufficient to conclude that the BB capacitor practices every element of any claim of the '791 Patent.  (*E.g.*, Br., Ex. 16 at 8 (showing a one-dimensional illustration of a vendor "P" capacitor).)[8]

**Fourth**, Presidio's reliance on Mr. Mruz' identification of a patented "BMC" structure in the BB capacitor is intentionally misleading and does not establish waiver regarding the '791 Patent.  In fact, *Presidio's counsel* elicited Mr. Mruz' testimony at trial that the inventions of the '791 Patent are **not** a "BMC" configuration—a fact Presidio ignores in its motion.  (Ex. 5, 6/11/19 Trial Tr. 376:16-377:7.)  Exhibit 18 to Presidio's motion is a 2004 email from Mr. Mruz stating that "Presidio . . . use[s] our patented BMC configuration," and he explains in the same email that the "BMC" structure results from the inclusion of a "floater electrode," **not** vias as Presidio argues now in an effort to improperly link this email to the '791 Patent.  (Br. at 12 (citing Ex. 18).)  In a similar vein, Presidio mischaracterizes Mr. Mruz' statements in his 2004 email of Exhibit 19 that the BB capacitor uses "Rich Monsorno's BMC structure" that "is covered in the Monsorno patent." (Br., 12 (citing Ex. 19).)  Again, in the same exhibit Mr. Mruz circles the "floater electrode" (an internal electrode layer that is electrically isolated from all other conductors) and refers to it, not the vias, as the "BMC structure."  (*Id*.)  It is next to this floater electrode structure—not the vias— that Mr. Mruz places an asterisk "*"and indicates that "[t]his is covered in the Monsorno patent." (*Id*.)  These exhibits thus confirm that the vias are not the "BMC" structure and that Mr. Mruz was

---

[8] Exhibit 17 to Presidio's motion is even less relevant.  It is an ATC email indicating that Mr. Mruz received the results of a search identifying certain Presidio patent applications having titles indicative of capacitors that include "vias" but providing minimal other information about the capacitor structure.  There is no evidence that these applications are in fact directed to the BB capacitor, and indeed the opposite seems to be true because their "Date Filed" is "2003," which is well after Presidio started selling the BB capacitor in 2001.  (Ex. 19, 6/17/19 Trial Tr., 1330:3-5.)

not referring to the '791 Patent.  This corroborates Mr. Mruz' trial testimony that he was not aware of the '791 Patent until his 2017 deposition (*see supra* at 23), as does his reference to "***the*** [singular] Monsorno patent" in Exhibit 19.[9]

***Fifth***, Presidio's statement that "the '791 patent describes *itself* as one such BMC capacitor" is false.  (Br. at 12 (emphasis in original).)  Just like Mr. Mruz did, the '791 Patent explains that the "BMC" structure includes an "***electrically isolated***" buried layer and points to "Prior Art" U.S. Patent No. 5,576,926.  (Br., Ex. 20, 2:34-37; *see also id.* at Figure 2 and 1:11-13 (stating that the '926 Patent teaches "a capacitor with an *electrically isolated* electrode buried between ceramic layers").)  The '791 Patent never refers to any of its inventive embodiments as "BMC" structures and in fact the remaining figures of the '791 Patent show that in every inventive embodiment of the '791 Patent the internal electrode identified as item 1 is ***not*** electrically isolated—in Figure 3, internal electrode 1 is electrically connected to conductive end cap 16, and in Figures 5 and 6, internal electrode 1 is electrically connected to the conductive external pad generally identified as item 7 by way of conductive via 25.  Accordingly, the inventive embodiments of the '791 Patent are not "BMC" structures.  Presidio's unsupported argument that any capacitor that has "a buried electrode" is "a BMC capacitor" fails.  (Br. at 12.)

Accordingly, when each of Presidio's foregoing misstatements is uncovered and addressed, Presidio has no evidence, much less clear and convincing evidence, of waiver.

---

[9] Further corroborating that Mr. Mruz lacked the requisite knowledge of the '791 Patent and Presidio's infringement thereof, Mr. Mruz testified in a prior trial involving Presidio and ATC that "BMC" refers to Mr. Monsorno's U.S. Patent No. 5,576,926.  (Ex. 20 at 116 ("In fact, what we found was the integration of an interdigitated plate MLC structure with a ***BMC structure*** that was patented by ATC, Richard Monsorno, in 1996, ***U.S. Patent Number 5,576,926***.") (discussing Ex. 21 at A22201) (emphasis added).)  ATC documents admitted into evidence during the prior trial also confirm that Mr. Mruz only knew about the '926 Patent, *not* the '791 Patent.  (Ex. 21 at A22201 (referring to "a BMC structure that was patented by ATC (Richard Monsorno) in 1996 (U.S. Patent # 5,576,926)"); Ex. 22, copy of '926 Patent.)

### C.      Presidio's Further Speculation is Not Evidence

Presidio next resorts to speculating about *why* ATC allegedly chose not to sue Presidio in an effort to conceal its lack of evidence.  Presidio offers two internally inconsistent theories, both of which are unsupported.  Neither establishes clear and convincing evidence of waiver.

Presidio's ***first theory*** is its speculation that ATC "chose not sue because they did not have a competing product."  (Br. at 14; *id*. at 13.)  This theory is unsupported argument entitled to no weight.  It also belies Presidio's motion.  If ATC was waiting to sue Presidio until ATC had a competing product—that is not what happened—that is not waiver.  ATC's period of damages would have been limited to six years before the date of suit but the suit would not have been barred. *See* 35 U.S.C. § 286 (2019); *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 137 S. Ct. 954, 961 (2017) (holding that § 286 "represents a judgment by Congress that a patentee may recover damages for any infringement committed within six years of the filing of the claim").

Presidio's ***second theory*** is that ATC had a "corporate 'policy' of not pursuing patent infringement claims."  (Br. at 14; *id*. at 13 (ATC's alleged "intellectual property 'policy'").)  This argument is equally incorrect and is inconsistent with Presidio's first theory.  Which is it: was ATC waiting to sue Presidio on the '791 Patent or did ATC decide it would never sue?  Unsurprisingly, Presidio has no evidence to support either theory so it does not know and cannot decide.

Presidio's sole alleged support for its second theory is the testimony of Ms. Kelly from a different trial involving different patents.  (*Id*. at 13 (citing Br., Ex. 23).)  There, Ms. Kelly testified that ATC had a "***live and let live***" policy with respect to its own intellectual property and she once believed that Presidio infringed different ATC "BMC" patents.  The BMC patents are *not* the '791 Patent as explained above.  *See supra* at 27-28 ("Fourth" and "Fifth") and 28 n.9.[10]  In addition,

---

[10] Ms. Kelly's reference to "BMC paten*ts*" (plural) is of no moment.  (Br., Ex. 23.)  It is a matter of public record that ATC had multiple foreign patents corresponding to its "BMC" U.S. Patent

the phrase "live and let live" does not mean that ATC would *never* sue for patent infringement. That phrase is commonly understood to mean that one will "tolerate the opinions and behavior of others so that they will similarly tolerate your own." (Ex. 24.) Thus, when Presidio chose in September 2014 to *not* let ATC "live" by filing a second lawsuit against ATC in California,[11] ATC thereafter investigated its potential claims against Presidio and filed the present lawsuit in November 2014. No reasonable person could interpret Ms. Kelly's testimony to mean that ATC would "let [Presidio] live" in perpetuity if the quid pro quo—*i.e.*, Presidio allowing ATC to "live"—was neither respected nor satisfied.[12]

At bottom, the plain meaning of Ms. Kelly's words is inescapable and Presidio never even took the time to ask Ms. Kelly in this case if she meant something different. In a like vein, Presidio relies on ATC's alleged "corporate policy" not to sue set by Mr. Insetta but never asked him a single question about any such policy. Presidio's multiplication of the proceedings through its waiver defense must end.

\*       \*       \*

For all of the foregoing reasons, the Court should deny Presidio's motion regarding waiver. Presidio cannot prove with clear and convincing evidence that ATC intentionally relinquished its known right to sue Presidio for infringement of the '791 Patent.

## IV.    CONCLUSION

For all of the foregoing reasons, Defendant's post-trial motion should be denied.

---

No. 5,576,926. (*E.g.*, Ex. 23.) Ms. Kelly's reference to "BMC patents" (plural) does not make the '791 Patent a BMC patent as Presidio's attorney argument suggests.

[11] *Presidio Components, Inc. v. American Technical Ceramics Corp.*, 3:14-cv-2061 (S.D. Cal.).

[12] Presidio's Exhibit 23 is also incomplete and misleading because Presidio omits the very next page where *Presidio's own counsel*, Mr. Ahrens, objected to this singular statement from Ms. Kelly as having "no foundation" and requested it be struck from the record, and the court in fact struck it from the record. (Ex. 25 (including the full sequence of Ms. Kelly's testimony).)

Date: August 9, 2019

Respectfully submitted,

/s/ *Peter F. Snell*
Peter F. Snell, Esq.
Brad M. Scheller, Esq.
Vincent M. Ferraro, Esq.
Harold S. Laidlaw, Esq.
Mintz Levin Cohn Ferris
  Glovsky and Popeo P.C.
666 Third Avenue
New York, NY 10017
Telephone: 212-935-3000
Facsimile: 212-983-3115
pfsnell@mintz.com
bmscheller@mintz.com
vmferraro@mintz.com
hslaidlaw@mintz.com

Ronald E. Cahill, Esq.
Heather Repicky, Esq. (*pro hac vice*)
Nutter McClennen & Fish LLP
Seaport West
155 Seaport Boulevard
Boston, MA 02210
(617) 439-2782
(617) 310-9782
rcahill@nutter.com
hrepicky@nutter.com

*Counsel to Plaintiffs*
*American Technical Ceramics Corp. and*
*AVX Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, certify and declare that I am over the age of 18 years and not a party to the above-entitled action.  On August 9, 2019, I caused a copy of the following document and its corresponding exhibits:

### **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S POST-TRIAL MOTION REGARDING INDEFINITENESS AND WAIVER**

to be served by email on the following:

> Gregory F. Ahrens, Esq.
> Brett A. Schatz, Esq.
> Wood, Herron & Evans, L.L.P.
> 441 Vine Street, 2700 Carew Tower
> Cincinnati, Ohio 45202
> (513) 241-2324
> (513) 241-6234 (Facsimile)
> gahrens@whe-law.com
> bschatz@whe-law.com
>
> Jeremy D. Richardson
> Michelman & Robinson, LLP
> 800 Third Avenue, 24th Floor
> New York, New York 10022
> (212) 730-7700
> (212)730-7725 (Facsimile)
> jrichardson@mrllp.com

I declare under penalty of perjury that the above is true and correct.  Executed on August 9, 2019, at New York, New York.

*/s/ Peter F. Snell*
Peter F. Snell
