UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------- X
                                       :
AMERICAN TECHNICAL CERAMICS CORP.      :
and AVX CORPORATION,                   :
                                       :
            *Plaintiffs*,               :      **MEMORANDUM & ORDER**
                                       :
    -against-                          :      14-CV-6544(KAM)(GRB)
                                       :
PRESIDIO COMPONENTS, INC.,             :
                                       :
            *Defendant*.                :
                                       X
---------------------------------------

**MATSUMOTO, United States District Judge:**

        Plaintiffs American Technical Ceramics Corporation
("ATC") and AVX Corporation (collectively, "plaintiffs")
commenced this action on November 6, 2014, against defendant
Presidio Components, Inc. ("Presidio" or "defendant"), alleging
infringement by Presidio of the following ATC patents:  United
States Patent No. 6,144,547 ("the '547 Patent"), United States
Patent No. 6,337,791 ("the '791 Patent," and together with the
'547 Patent, the "patents-in-suit"), and United States Patent
No. 6,992,879 ("the '879 Patent").  (ECF No. 1, Compl.)
Plaintiffs seek a determination that Presidio willfully
infringed the patents-in-suit, and injunctive relief prohibiting
Presidio from engaging in further infringement.[1]  Plaintiffs also

---

[1]    Plaintiffs declined to proceed with their action as to all claims of
the '879 Patent which were cancelled by the U.S. Patent and Trademark Office.
(ECF No. 126, Mem. & Order on Cross-Motions for Summ. J. ("SJ Order"); *see*

seek damages from the alleged infringement, including attorneys'
fees and costs.

After *inter partes* review ("IPR"), two claim
construction hearings pursuant to *Markman v. Westview
Instruments, Inc.*, 517 U.S. 370 (1996), and cross-motions for
summary judgment, the parties proceeded to trial.  The court
held a two-week trial in which plaintiffs tried to a jury their
allegations that defendant infringed the patents-in-suit, and
that it infringed the '791 Patent willfully.  (*See* Minute
Entries dated 6/10/2019 to 6/21/2019.)  At trial, defendant
presented evidence related to two defenses it now asserts for
decision by the court: (1) that the '547 Patent was invalid
because the claim term "negligibly over a top surface" was
indefinite; and (2) that plaintiff had waived its right to sue
for infringement of the '791 Patent.  (*See* ECF No. 157, Prop.
Jt. Pretrial Order 4.)  Presently before the court is the
parties' post-trial briefing on defendant's asserted invalidity
defense and equitable defense of waiver.  (*See* ECF No. 206-1,
Def. Mem.; ECF No. 207, Pls.' Opp. ("Opp."); ECF No. 208, Def.
Reply ("Reply").)

For the reasons discussed below, the court finds that
defendant has failed to prove by clear and convincing evidence

_____

*also* ECF No. 116-2, Pl. Summ. J. Mot. 2 n.1.)  Also, plaintiffs only seek
injunctive relief as to the '791 Patent.  (*See* ECF No. 157, Prop. Jt.
Pretrial Order 3.)

that the claim term "negligibly over a top surface" rendered the '547 Patent invalid for indefiniteness, or that plaintiff ATC had waived its right to sue under the '791 Patent.

**BACKGROUND**

The court assumes familiarity with the procedural and factual history of this case, as set forth most recently in the court's pre-trial Memorandum and Order deciding the parties' respective expert evidentiary issues pursuant to *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), (ECF No. 179, Mem. & Order on *Daubert* Mots. ("Daubert Order")), and the court's Memorandum and Order deciding the parties' respective motions *in limine*, (ECF No. 181, MIL Order).

After a two-week trial, the jury found that Presidio had not established by clear and convincing evidence that the '791 Patent was invalid as anticipated, as obvious, or as indefinite. (*See* ECF No. 201, Jury Verdict 6.) The jury also found that Presidio had not established by clear and convincing evidence that the '547 Patent was invalid as anticipated or obvious, or that the claim term "substantially L-shaped terminations" was indefinite. (*Id.* at 7-8.) The jury, however, found by clear and convincing evidence that the claim term "negligibly over a top surface of said device body" is indefinite. (*Id.* at 8.) The parties dispute whether this finding by the jury is a general verdict and what weight the

3

court should give the verdict.  (*See* DM 2; Opp. 4; Reply 2.)
Presidio characterizes the verdict as a "general verdict"
without explaining the effect, while plaintiffs argue the
verdict is merely advisory and should be afforded no weight.

The jury also returned a verdict for plaintiffs as to
infringement, finding all the accused products infringed either
the '547 Patent or the '791 Patent.  (Jury Verdict 3-4.)  The
jury found, however, that Presidio did not willfully infringe
the '791 Patent.  (*Id.* at 5.)  Finally, in determining damages
for Presidio's infringement of the patents-in-suit, the jury
found plaintiffs were not entitled to an award of lost profits
as to either of the patents-in-suit, but that plaintiffs were
entitled to a reasonable royalty as to both patents, awarding
$58,334.75 as to the '547 Patent, and $680,647.00 as to the '791
Patent.  (*Id.* at 9.)

## LEGAL STANDARD

In this patent case the court applies the law of the
Federal Circuit to patent issues, and the law of its regional
circuit, the Second Circuit, to non-patent issues.  *In re
Cambridge Biotech Corp.*, 186 F.3d 1356, 1368 (Fed. Cir. 1999);
*see also Coconut Grove Pads, Inc. v. Mich & Mich TGR, Inc.*, 222
F. Supp. 3d 222, 250 n.6 (E.D.N.Y. 2016).  Thus, questions
regarding indefiniteness and waiver, for example, are governed

by Federal Circuit law. The court applies the foregoing analysis to the parties' pending motions and objections.

**DISCUSSION**

Defendant requests the court adopt the jury's verdict that the '547 Patent's claim term "negligibly over a top surface of said device body" is indefinite. (DM 1.) Defendant also requests the court find that plaintiffs waived their rights to sue for infringement under the '791 Patent because they had actual knowledge of Presidio's alleged infringement for more than a decade. (*Id.*) Plaintiffs oppose, arguing that the jury's indefiniteness verdict was merely advisory, (Opp. 1-2), that the claim term is nevertheless definite, and that plaintiffs did not possess actual knowledge of infringement of the '791 Patent as defendant argues, (*id.* at 21-28).

## I.    Invalidity

Defendant argues that the '547 Patent's claim term "negligibly over the top surface" is indefinite as evidenced by the testimony of both parties' experts and confirmed by the jury's verdict. (DM 1.) Defendant also argues at length that the jury's invalidity verdict represents a "general verdict" as "the jury was instructed to apply the law as provided by the Court" to the facts of the case. (*Id.* at 3 (citing *Anderson Grp. LLC v. City of Saratoga Springs*, 805 F.3d 34, 33 n.7 (2d Cir. 2015)).) The jury found, defendant argues, that no

5

reasonably certain standard existed for determining what
constituted a "negligible" amount of termination material.  (DM
5.)  According to defendant, the trial evidence demonstrated by
clear and convincing evidence that nothing in the '547 Patent
informs a person of skill in the art ("POSITA") regarding the
limit or scope of the claim term.  (*Id.*)

Plaintiffs respond that the claim term's scope is
defined with reasonable certainty by the '547 Patent's intrinsic
record.  (Opp. 1.)  That is, the claim language "substantially
L-shaped," the distinguished prior art and example embodiments,
and the patent's prosecution history, support a finding of
definiteness in light of Federal Circuit authority.  Plaintiffs
further argue that the jury's verdict was advisory and that
Presidio's trial conduct violated the court's *in limine* orders
and thus compromised the jury's verdict.

Whether or not the verdict is characterized as general
because the jury applied the law of invalidity to the facts of
the case, the court must adopt the verdict in order for it to
become binding.  Indeed, there can be no confusion over how the
parties intended to try defendant's indefiniteness defense, and
plaintiffs cite to a number of examples of representations by
defendant.  Most notable is defense counsel's statements at the
court's Final Pretrial Conference, characterizing the jury's
verdict as to indefiniteness as advisory and indicating the

court's decision "would only come after the advisory verdict."
(ECF No. 207-2, Pls.' Ex. 3, Pretrial Conf. Tr. 27.[2])  Moreover,
the parties' Joint Proposed Pretrial Order indicated Presidio's
defense of indefiniteness may need to be resolved by the court.
(Jt. Prop. Pretrial Order 4.)  Though the jury was instructed on
the law of indefiniteness, and the court affords its verdict
some weight, the court must nevertheless determine for itself
whether defendant met its burden by clear and convincing
evidence that the claim term "negligibly over a top surface" is
indefinite.

## A.   Legal Standard

   "[A] patent is invalid for indefiniteness if its
claims, read in light of the specification delineating the
patent, and the prosecution history, fail to inform, with
reasonable certainty, those skilled in the art about the scope
of the invention."  *Nautilus, Inc. v. Biosig Instruments, Inc.*,
134 S. Ct. 2120, 2124 (2014).  Further, patents enjoy a
"presumption of validity, a presumption not to be overthrown
except by clear and cogent evidence."  *Microsoft Corp. v. I4I
Ltd. P'ship*, 564 U.S. 91, 101 (2011) (quoting *Radio Corp. of Am.
v. Radio Eng'g Labs.*, 293 U.S. 1, 2 (1934)); *see also* 35 U.S.C.

---

[2]     Citations to the parties exhibits, filed as a single document with
internal bookmarks, are generally to the pagination as marked by the court's
electronic case filing ("ECF") system.  To the extent the exhibits are
transcripts of the trial held in this case, the court cites to the transcript
pages and lines rather than ECF pagination.

§ 282(a) (providing that a patent and each of its claims "shall be presumed valid," and "[t]he burden of establishing the invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity").  Thus, invalidity, including by reason of indefiniteness, must be proven by clear and convincing evidence.  *Microsoft*, 564 U.S. at 95.

The standard for definiteness affords some leeway for the "inherent limitations of language."  *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1340-41 (Fed. Cir. 2015).  "Some modicum of uncertainty is the 'price of ensuring the appropriate incentives for innovation.'"  *Nautilus*, 134 S. Ct. at 2128 (quoting *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 732 (2002)).  On the other hand, "a patent must be precise enough to afford clear notice of what is claimed, 'thereby apprising the public of what is still open to them.'"  *Id.* at 2129 (alteration omitted) (quoting *Markman*, 517 U.S. at 373) (internal quotation marks omitted).

Whether a claim term is indefinite is a question of law.  *Teva Pharms.*, 789 F.3d at 1341 (quoting *Wellman, Inc. v. Eastman Chem. Co.*, 642 F.3d 1355, 1365-66 (Fed. Cir. 2011)).  A particular term's significance or meaning in the industry, to one of skill in the art, is a factual issue, however.  *Id.* at 1342 ("Understandings that lie outside the patent documents about the meaning of terms to one of skill in the art or the

science or state of the knowledge of one of skill in the art are factual issues.").

The Federal Circuit has found a claim term indefinite where the patent's intrinsic record did not disclose, with reasonable certainty, the particular method to be used for determining whether the term was satisfied. *See Dow Chem. Co. v. NOVA Chem. Corp.*, 803 F.3d 620, 633 (Fed. Cir. 2015). For example, in *Teva Pharms.*, 789 F.3d 1335, 1340–41 (Fed. Cir. 2015) the Federal Circuit found the relevant patents indefinite, as the patents did not specify *how* to calculate a measurement when there were admittedly multiple ways to do so that yielded different results. *Teva Pharms.*, 789 F.3d at 1344-45. Thus, claim terms must "'provide objective boundaries for those of skill in the art' when read in light of the specification and the prosecution history." *Liberty Ammunition v. United States*, 835 F.3d 1388, 1395 (Fed. Cir. 2016); *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1370 (Fed. Cir. 2014). "Claim language employing terms of degree has long been found definite where it provided enough certainty to one of skill in the art when read in the context of the invention." *Nautilus*, 783 F.3d at 1378.

**B. Findings of Fact**

Generally, the court is required to make findings of fact on an action tried without a jury or with an advisory jury

pursuant to Federal Rule of Civil Procedure 52.  As discussed above, however, the question of indefiniteness is a question of law that requires the court consider the intrinsic record of a patent.  *Teva Pharms.*, 789 F.3d at 1342 ("A party cannot transform into a factual matter the internal coherence and context assessment of the patent simply by having an expert offer an opinion on it.").  While "[e]xperts may explain terms of art and the state of the art at any given time, . . . they cannot be used to prove the legal construction of a writing." *Id.* at 1339.

The parties offered testimony at trial from their respective experts, each a purported POSITA, concerning whether a POSITA could determine the scope of the claim term "negligibly over a top surface."  While the experts' opinions were properly admitted under Federal Rule of Evidence 702, the question of indefiniteness is one of law left for the court to decide.  The parties agree that answering the legal question of indefiniteness requires the court to look to the intrinsic record, and apparently do not dispute what comprises the intrinsic record.  The factual testimony the parties offered concerned only the meaning, if any, a POSITA would assign to the terms "negligible" or "small," and it is undisputed that neither phrase is a term of art.  (Tr. 1817:1-9 (Randall Testimony); Tr. 2255:22-25 (Shanfield Testimony).)  Moreover, the parties'

respective experts offered various opinions of whether the claim term "negligibly over a top surface" informed a POSITA as to the scope of the claimed invention.  The court need not repeat or make factual findings regarding these offered opinions.  The only factual finding the court must make regarding indefiniteness, as supported by trial testimony, is that the terms "negligibly" and "small" "ha[ve] no default meaning to one of skill in the art."  *Teva Pharms.*, 789 F. 3d at 1341.

**C.  Application**

1.  <u>Indefiniteness</u>

The parties generally do not dispute the law governing indefiniteness, only its application to the facts adduced at trial.  Indeed, both plaintiffs and defendant appear to agree that courts look to the patents' intrinsic record, which includes the patent's claims, specifications, and prosecution history, in determining whether the claim term informs a POSITA of the claim term's scope with reasonable certainty.  (*See, e.g.*, DM 4; Opp. 3.)  The parties dispute amounts to whether defendant can point to clear and convincing evidence in the record that the claim term "negligibly over a top surface" is indefinite.  The court finds that it has not.

In deciding the parties' cross-motions for summary judgment, the court denied defendant's motion as to the invalidity of the '547 Patent, finding that a genuine dispute of

11

material fact existed.  At summary judgment, defendant argued, as it does here, that the claim term "negligibly over a top surface" was indefinite and that no reasonable jury could find otherwise.  (SJ Order 41-42.)  The court, however, found that plaintiffs proffered sufficient evidence in the form of Dr. Shanfield's expert report that the claim terms were not indefinite.  (*Id.* at 42-43.)  The court also noted that both the PTAB and the court necessarily construed the term "negligibly over a top surface" in construing the '547 Patent's claims and in conducting *inter partes* review.  (*Id.* at 43.)

The court construed "negligibly over a top surface" to mean "a small amount of termination material is formed on a top surface of the device body."  (Cl. Constr. Order 22.)  Defendant argues that claim terms such as "small" and "large" are routinely found indefinite, citing to several district court cases from other circuits.  (DM 5.)  Plaintiffs point out, however, that claims using terms of degree are definite when the patent's context informs a POSITA of the scope of the claims with reasonable certainty, citing to *Nautilus*, 783 F.3d at 1378. (Opp. 3.)  As the parties agree, the court must look to the patent's intrinsic record to determine definiteness, aided by the evidence presented at trial.  Defendant's citations to district court cases cannot establish a rule that terms of degree, like "small," are generally found indefinite.  Without

citation to or an explanation of the intrinsic records of the patents at issue in those cases, defendant's proposition of law is hollow and offers no analogous support. Analyzing claim terms alone, without the aid of the intrinsic record, is not helpful in determining whether the claim term at issue in this case is indefinite.

In supporting its case for indefiniteness, defendant relies almost exclusively on trial or deposition testimony and on expert reports by the parties' respective experts and purported POSITAs. As the court noted in deciding the parties' summary judgment motions, there is at least a dispute as to whether the claim term is indefinite as the parties have both offered experts at trial on this issue, unsurprisingly offering competing conclusions. Defendant argues that there is no limit specified in the patent's intrinsic record, as evidenced by testimony of the parties' respective experts at trial. Defendant points to the testimony of defendant's expert, Dr. Randall; of plaintiffs' validity expert, Dr. Shanfield; and of plaintiffs' Rule 30(b)(6) corporate designee, Mr. Ritter. (DM 6.) Defendant cites this testimony to argue that skilled artisans, purported POSITAs, could not identify the scope of the terms "negligibly" or "small," and that the patent itself offers no limitation for the terms.

13

The parties' experts, as noted above, at least agreed the terms "negligible" and "small" were not industry terms of art. (Tr. 1817:1-9; 2255:22-25.) Dr. Randall, defendant's expert, testified that a POSITA would not know the scope of the terms "small" or "negligible." (Tr. 1817:10-15.) He also testified that the '547 Patent contained no "numerical limitation of negligibly or small," (Tr. 1817:21-24), though the court had already concluded that a numerical limitation is not required to construe this claim term.

Defendant next points to Dr. Shanfield's deposition testimony concerning the variability of solder creep, as contemplated in the '547 Patent. (ECF No. 206-2, Def.'s Ex. 5, Shanfield Dep. 26.) Dr. Shanfield acknowledged there was nothing in the patent that specified the extent to which the top termination material of the claimed capacitor would vary as a result of solder creep. (*Id.*) Defendant argues that this potential variability, and Dr. Shanfield's inability to define its range, are evidence that the top termination has "no defined dimension." (DM 7 (citing Randall Rept. ¶ 594).)

Defendant also cites to plaintiffs' expert Dr. Hillman's testimony. At trial, Dr. Hillman declined to comment on what amount of termination material would be "significant" and what amount would be "small." (Tr. 934-46.) Even if Dr. Hillman could not "offer an explanation of the difference

14

between" a "'small' amount of termination from a 'significant'
amount of termination" material, as defendant argues, the court
is not bound by his inability.  (DM 8 (citing Tr. 934-936).)
Notably, Dr. Hillman framed his understanding of the term
negligibly using the *relative* amounts of termination material,
comparing the top termination to the bottom termination, to
determine if the '547 Patent claims were met in evaluating the
accused products.  (*See, e.g.*, Tr. 940: 7-12.)  Though he did
not articulate as much at trial, this method is similar to the
relational comparison required by the claim term "substantially
L-shaped," which the court has previously found further
clarifies the scope of the term "negligibly over a top surface"
and obviated the need for any further construction or
limitation.  Dr. Shanfield explained as much at trial.  (Tr.
2217-2218.)

Though defendant relies heavily on expert testimony to
support its indefiniteness case, plaintiffs' experts offered
ample, credible, and competing opinions on the question of
definiteness.  In light of these competing, credible views, the
trial testimony alone did not establish by a preponderance of,
let alone by clear and convincing, evidence, that the claim term
fails to inform a POSITA of the invention's scope to a
reasonable certainty.  Thus, as it must, the court turns to the
intrinsic record.

Defendant's only real citation to the intrinsic record is the '547 Patent's prosecution history and statements made by plaintiffs before the Patent and Trial Appeal Board ("PTAB"). (DM 8.) Plaintiffs' counsel represented that the "negligible top-land termination" could not "exceed 0.05 millimeters." (ECF No. 206-2, Def.'s Ex. 9, PTAB Tr. 50.) Similarly, defendant argues that Dr. Shanfield, plaintiffs' expert, testified at his deposition that the top-land terminations were "extremely likely not to have a dimension exceeding .1 millimeters" or a dimension of 0.1 millimeters. (DM 9 (citing ECF No. 206-2, Def.'s Ex. 10, Shanfield Dep. 53).)

Plaintiffs largely do not respond with citations to the trial transcript. Instead, plaintiffs rely heavily on the patent's claim term "substantially L-shaped terminations" to argue that the scope of "negligibly" is reasonably certain because it "must operate to make the termination as a whole appear 'substantially L-shaped.'" (Opp. 3.) Plaintiffs also argue that the court relied on the "substantially L-shaped" claim language to construe the term "negligibly." (Opp. 4 (citing Cl. Constr. Order 22).) Similarly, at summary judgment, the court noted that it previously construed the term "negligibly" without difficulty, and that the PTAB understood the scope of the term when it authorized the patent to issue. (SJ Order 43.)

Plaintiffs next cite to the '547 Patent's specification and prosecution history to provide the upper and lower bounds of "negligibly." (Opp. 5.) Plaintiffs first point to the patent's specification which contrasted the '547 Patent with prior art capacitors that had top and bottom lands of the same size, likely referring to U-shaped terminations. (*Id.* (citing '547 Patent col.5 l.43).) As a lower bound, plaintiffs cite to the patent's prosecution history which "distinguishe[d] the L-shaped terminations of the Galvagni prior art," a patent claiming L-shaped terminations. Plaintiffs note that the patent examiner amended the '547 Patent's claim terms finding that Galvagni "d[id] not disclose a portion of the terminations negligibly over the top surface." (Opp. 5 (citing Pls.' Ex. 2, Examiner's Am. 6-7).) Plaintiffs argue that such amendments weigh in favor of a finding of definiteness. (*Id.* at 6 (citing *Tinnus Enters., LLC v. Telebrands Corp.*, 733 F. App'x 1011, 1020 (Fed. Cir. 2018)).)

Defendant appears, once again, to urge on the court that a specific limit is required to render "negligibly" a definite term. Though defendant appears to have abandoned its argument that a *numerical* limitation is required, the court has already declined to read in a numerical limitation in construing the term. Defendant's only citation to the intrinsic record is the *inter partes* review transcript where plaintiffs' counsel

17

stated 0.05 millimeters served as an upper limit of the negligible top-land termination material. The court declined, however, to import this specific limitation during claim construction and again declines to find that the prosecution history renders the scope of the claim indefinite to a POSITA.

The '547 Patent does, however, specify a reasonably certain limitation that the defendant seeks. That is, a negligible top termination must comprise a termination that is "substantially L-shaped." The jury found *this* term informed a POSITA as to the scope of the claimed invention to reasonable certainty; defendant does not dispute this finding or further challenge it. Defendant only earnestly meets plaintiffs' argument that "substantially L-shaped" provides an objective criterion by arguing "negligible" and "small" are not defined as any specific amount of termination material on the top surface that is less than the bottom surface. (Reply 7-8.) Such specificity is not required.

It is undisputed that "negligible" and "small" are not terms of art that clarify the scope of the claim term at issue. It is also undisputed, however, that L-shaped and U-shaped terminations are terms of art. (*See* Tr. 2219:1-2.) Still, industry terms of art are not necessary to clarify the scope of the claim term negligibly, as the term, read in the context of the patent as a whole, must contribute to terminations that are

substantially L-shaped.  Any more than a negligible amount of top termination material, would render the termination not "substantially L-shaped," as the court has repeatedly found.

Defendant's argument requires reading the term "negligibly" in a vacuum.  Federal Circuit precedent, however, does not permit this analysis without the benefit of context. Indeed, in *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, the court found that the claim language, coupled with illustrations and specifications of the patent at issue provided "sufficient clarity to skilled artisans as to the bounds of th[e] disputed term."  783 F.3d at 1382-83.  Though the term negligibly itself is indeed vague as to its bounds, reading the claim term in the context of the intrinsic record provides a ready limitation.  The court finds that the '547 Patent's claim term "negligibly over a top surface" informs a POSITA as to the scope of the claimed invention to a reasonable certainty. Defendant did not carry its burden by clear and convincing evidence.

> 2.  Misconduct

Before the court considers defendant's waiver argument, plaintiffs' argument that the court should not afford the advisory verdict any weight because of misconduct at trial by Presidio bears some discussion.  (Opp. 12.)  As an initial matter, the court ultimately did not consider defendant's

alleged misconduct in reaching its decision on indefiniteness.
According to plaintiffs, Presidio violated the court's
evidentiary orders throughout trial by repeatedly suggesting
"negligibly" had a numerical limitation and improperly objecting
during plaintiffs' witness examination. (*Id.*) Plaintiffs argue
this misconduct confused and misled the jury. Plaintiffs
contend Presidio's efforts contravened the court's construction
of the claim term, which included no numerical limit, (Cl.
Constr. Order 22), and violated the court's *in limine* rulings,
(MIL Order 10-11). Although Presidio's counsel was admonished
for statements made during opening statements, plaintiffs
contend Presidio continued in this vein throughout trial. For
example, counsel for Presidio repeatedly asked, over objection,
plaintiffs' expert Dr. Hillman whether he had measured top
termination material on Presidio's BB capacitors. (Opp. 14
(citing Tr. 865:17-21; 871:21-872:1; 873:7-10; 934:22-935:7;
943:7-25).) Presidio's examination of its own expert witness,
Dr. Randall, also drew a curative instruction from the court
that the jury "may not apply the numerical values" found in the
specifications of the '547 Patent in its infringement analysis
of the top termination material. (Tr. 1593:22-1605:12.)
Finally, plaintiffs point to Presidio's series of objections
during plaintiffs' expert Dr. Shanfield's direct examination, in
which Presidio's counsel argued that the court's *in limine*

orders precluded any relational analysis comparing the extent of the top and bottom terminations, which the court concluded it did not.  (Opp. 15 (citing Tr. 2192:2-2193:22; 2213:17-2214:25).)  While much of this final exchange occurred at sidebar, plaintiffs contend Presidio's objections at least distracted the jury.  (Opp. 16.)

Presidio's conduct at trial indeed pushed the limits of the court's *in limine* rulings and claim construction, though the court cannot say it crossed the line into affirmative misconduct, but, rather, came close.  Counsel for Presidio appeared, at times, either to disregard or not to understand the court's rulings on plaintiffs' objections to questions eliciting testimony regarding termination measurements and numerical limits.  These interruptions were at least distracting to the jury, and the litigants, and disruptive to the flow of trial, but it is not clear they misled or confused the jury such that the court's curative instructions were ineffective.  In any event, the court does not find this trial conduct so infected the jury's advisory verdict such that the court must completely disregard it.

## II.    Waiver

Defendant next argues that the court should find plaintiffs waived their right to sue for infringement of the '791 Patent by failing to enforce their rights for more than a decade

after becoming aware of the alleged infringement.  Defendant
contends that plaintiffs analyzed Presidio's BB capacitors as
early as 2002 and determined that those capacitors were covered
by ATC's patents.  (DM 11.)  Plaintiffs respond that, although
they had determined Presidio's BB capacitors contained vias, no
witness possessed the requisite knowledge for the court to find,
by clear and convincing evidence, that plaintiffs intentionally
relinquished their rights to enforce the '791 Patent "with full
knowledge of the material facts."  *Qualcomm Inc. v. Broadcom
Corp.*, 548 F.3d 1004, 1019-1020 (Fed. Cir. 2008).

         The Federal Circuit has suggested the applicability of
two equitable doctrines of waiver in patent actions: "true
waiver" and "implied waiver."  *Qualcomm*, 548 F.3d at 1020 (Fed.
Cir. 2008).  Implied waiver applies where a patent owner has
intentionally failed to disclose the existence of a patent "in
the face of a duty to speak," and is inapplicable to the instant
action.  *Id.* at 1021.  The Federal Circuit has further
suggested, but does not appear to have expressly endorsed the
view, that "true waiver" consists of a "voluntary or intentional
relinquishment of a known right."  *Id.* at 1019.  Additionally,
although the Federal Circuit does not appear to have expressly
ruled on the standard of proof required for waiver, it has
upheld a finding of *implied* waiver where there was "clear and
convincing evidence."  *See id.* at 1021-22.  Defendant does not

specify which doctrine it believes applies to plaintiffs' conduct, though the parties appear to dispute whether plaintiffs held full knowledge of its rights and nevertheless intentionally waived, referring to "true waiver." Defendant does not argue as to what burden applies to its waiver defense and plaintiffs assert that the burden is clear and convincing without citation to legal authority.

The court previously denied plaintiffs' motion for summary judgment based on defendant's asserted equitable defense of waiver. The court found that plaintiffs had not demonstrated an absence of disputed material facts concerning defendant's equitable defense of waiver as to the '791 Patent. (SJ Order 76.) That is, defendant had presented at summary judgment sufficient evidence to permit a reasonable fact-finder to conclude that plaintiffs had knowledge of Presidio's alleged infringement of the '791 Patent. The court must now determine if Presidio established—through its trial evidence—whether plaintiffs intentionally relinquished their right to enforce the '791 Patent with full knowledge of the material facts.

Presidio summarizes its argument as follows: plaintiffs knew that Presidio's BB capacitors had vias claimed in the '791 Patent in 2002, concluded that the BB capacitors were covered by a Monsorno BMC patent in 2004, and yet chose not to sue Presidio. Defendant calls this "actual knowledge of the

infringement of the Monsorno patents." (DM 14.) Plaintiffs
respond that "actual knowledge" requires a single person to have
knowledge that the BB capacitors contained vias and knowledge of
the '791 Patent. Plaintiffs oppose defendant's motion by
refuting each witness's knowledge of either the BB capacitor's
vias or the '791 Patent. Plaintiffs also argue that defendant's
"should have known" allegations do not rise to the level of
intent required to prove waiver because "negligence, oversight,
or thoughtlessness" is insufficient to prove waiver. (Opp. 23
(citing *Hudson River Sloop Clearwater, Inc. v. Dep't of the
Navy*, No. 86-CV-3292, 1989 U.S. Dist. LEXIS 19034, at *21
(E.D.N.Y. May 1, 1989)).) Thus, plaintiffs conclude, Presidio's
contention that plaintiffs were "charged" with knowledge is
insufficient to prove waiver. Defendant characterizes
plaintiffs' argument that actual knowledge is required as
unsupported by case law. Neither plaintiffs nor defendant,
however, cite to clearly controlling authority for this point.
Defendant bears the burden of proving waiver, and it has not
cited any authority for the proposition that waiver may be found
based on constructive or charged knowledge.

Defendant musters the following record evidence to
establish that plaintiffs were aware of Presidio's alleged
infringement of the '791 Patent. Plaintiffs' engineers, and
specifically John Mruz, analyzed Presidio's BB capacitors as

early as 2004.  (ECF No. 206-2, Def.'s Ex. 13, Mruz Notes and
Emails 64; Def.'s Ex. 15, *Presdio I* Trial Tr. 91-93.)
Plaintiffs concede this, yet argue that Mruz was not aware of
the '791 Patent until his deposition in this case in 2017.
(Opp. 23.)  Defendant further contends that plaintiffs'
employees apparently reported the fact that BB capacitors
contained vias to other engineers and to plaintiffs' upper
management.  As evidence, defendant points to a 2004 email
between Mruz and Bob Grossbach, another ATC engineer, attaching
presentation slides which included a diagram of a capacitor with
vias entitled "The Approach of Vendor 'P.'"  (DM 11 (citing ECF
No. 206-2, Def.'s Ex. 16, Slides 110-18).)  Based on this
evidence, and plaintiffs' concession, the court can at least
conclude that employees at ATC had knowledge that BB capacitors
contained vias sometime between 2002 and 2004.  Whether or not
this presentation was actually given to, or even intended for,
ATC's management has not been proven, but is also not disputed
by plaintiffs.

        This allegation alone, however—that ATC's employees,
and possibly its management, knew the BB capacitors contained
vias—is not sufficient to establish that plaintiffs were aware
the BB capacitors *infringed* the '791 Patent as early as 2002 or
2004.  Defendant must tie the fact that BB capacitors contained

vias to the '791 Patent to establish ATC's waiver.  Knowledge of the vias alone cannot do this.

Defendant attempts this connection by citing emails from Mruz that indicate he was aware of Presidio products that were covered by a Monsorno patent.  In 2004, Mruz noted to another ATC employee that Presidio used plaintiffs' "patented BMC configuration."  (ECF No. 206-2, Def.'s Ex. 18, Mruz Apr. 23, 2004 Email 124.)  Mruz also determined in 2004 that certain Presidio broadband capacitors used "Rich Monsorno's BMC structure."  (Def.'s Ex. 19, Mruz Mar. 11, 2014 Email 126.) Though plaintiffs do not dispute Mruz's conclusion, the parties disagree as to *which* Monsorno patent Mruz referred.  Defendant contends that the '791 Patent is the only Monsorno patent that claims vias.  (DM 12.)  This fact, they argue, indicates the Monsorno patent referred to in Mruz's March 11, 2004 email is the '791 Patent, and not some other patent.  Plaintiffs respond that the structure apparently covered by the Monsorno patent in Mruz's email attachment was not the capacitor's vias, but the BMC structure.  (Opp. 26-27.)  Plaintiffs point out the asterisk placed by Mruz next to the annotated BMC structure, which refers to the additional annotation "[t]his is covered in the Monsorno patent."  (Mruz Mar. 11, 2014 Email 127.)  Plaintiffs also argue that Mruz testified, without contrary evidence, that he was unaware of the '791 Patent until 2017.  (Opp. 23.)  Plaintiffs

further argue, albeit in a footnote, that Mruz testified at a different trial between the parties and referred to a BMC structure as patented in Monsorno's '926 Patent, U.S. Pat. No. 5,576,926.  (*Id.* at 28 n.9 (citing Pls.' Ex. 20, Tr. 116).)

The parties dispute, then, amounts to whether the Monsorno patent referred to in Exhibit 19 is the '791 Patent such that it is clear plaintiffs had actual knowledge of defendant's alleged infringement of that patent and not some other Monsorno patent.  Defendant argues in support of its position that the '791 Patent refers to itself as a BMC capacitor, because it describes "BMC" capacitors as those including buried electrodes and describes a preferred embodiment as one including a buried layer capacitor structure.  (DM 12 (citing '791 Patent col.1 l.26; col.2 l.34).)  Therefore, a reference to a "Monsorno BMC patent," according to defendant must refer to the '791 Patent.  (DM 13.)  Defendant further points to the '791 Patent's claim of a buried electrode, ('791 Patent col.4 l.33), a specification describing a preferred embodiment having a first electrode layer surrounded and literally buried in ceramic, (*id.* col.3 l.4), and the patent's abstract which notes the first electrode layer's ceramic enclosure, (*id.* at 1).  Interestingly, however, one of the '791 Patent's preferred embodiment descriptions, upon which defendant relies refers back to the BMC structure "generally designated

according to the prior art and described more fully in Monsorno U.S. Pat. No. 5,576,926," the '926 Patent. ('791 Patent col.2 l.36.) Plaintiffs also point out that the '791 Patent does not refer to "its inventive embodiments as 'BMC' structures," and that the '791 Patent's inventive embodiments are not electrically isolated. (Opp. 28.)

Defendant next points to plaintiffs' characterization of the BB capacitors as broadband capacitors and the '791 Patent as a broadband patent. (Reply 10.) However, these statements can not satisfy defendant's burden. Neither can ATC's emphasis at trial that the '926 Patent is *not* a broadband patent. (*Id.* (citing Trial Tr. 127:14-19).) These statements at trial, by plaintiffs' counsel during his opening statement, do not establish that the "Monsorno patent" referred to by plaintiffs' employees in 2004 was the '791 Patent.

Defendant finally raises its 2009 trial in California against ATC for patent infringement. There, plaintiffs' witness testified that ATC believed Presidio's products infringed "multiple Monsorno BMC patent*s*." (DM 13 (citing Def.'s Ex. 23, *Presidio I* Trial Tr. 148).) The same witness, ATC's former Vice President, Kathleen Kelly, testified that plaintiffs declined to sue Presidio for infringement due to some policy implemented by Victor Insetta, ATC's founder. Defendant argues this testimony makes clear that plaintiffs believed Presidio infringed multiple

Monsorno patents, including the '791 Patent, which defendant calls a BMC patent.  Plaintiffs respond by pointing to Kelly's deposition testimony in this case that she was not aware of any ATC employee completing an infringement analysis of Presidio's products infringing the '791 Patent.  (ECF No. 207-2, Pls.' Ex. 15, Kelly Dep. 167-68.)

Defendant's contention that ATC honored a corporate policy of non-enforcement is not mere speculation given Kelly's earlier trial testimony.  However, even if defendant proved the policy, it would not necessarily prove that ATC intentionally waived its rights under the '791 Patent with full knowledge of the material facts.  Defendant does speculate, however, when it implies that plaintiffs declined to sue upon learning of Presidio's alleged infringement because plaintiffs did not, at the time, have a product that competed with the BB capacitors. (DM 13 (citing 416).)  This speculative argument does not support a finding of knowing waiver by ATC.

The court finds that defendant has not established waiver by clear and convincing evidence, or even by a preponderance of the evidence.  As the court found in denying plaintiffs' summary judgment, the Mruz email referring to BMC structures "leaves significant room for dispute."  (SJ Order 76.)  Defendant, however, has not clarified the uncertainty surrounding this email with evidence sufficient to leave the

court with a clear and abiding conviction that Mruz was aware that the BB capacitors, as early as 2004, potentially infringed the '791 Patent.  Mruz is clearly referring to and even annotated the BMC structure, not vias, when he referred to Monsorno's patent.  Moreover, even the '791 Patent refers to the '926 Patent as prior art describing more fully the claimed BMC structures.  The court cannot find that even a preponderance of the evidence establishes Mruz's knowledge as early as 2002 or 2004 of both the '791 Patent and Presidio's alleged infringement.

Defendant's remaining evidentiary support in Kelly's prior testimony offers no further clarity.  In light of her deposition testimony in this case, Kelly's testimony at a *previous* trial does not clearly establish that she was referring to Presidio's infringement of the '791 Patent.  All defendant has adduced is evidence that ATC was aware Presidio employed vias in its BB capacitors as early as 2002, and that plaintiffs' employee believed certain of Presidio's products were "covered by" a "Monsorno patent."  Defendant has not, therefore, established which Monsorno patent Mruz referenced.  Mruz's deposition testimony at least contradicts evidence that he was referring to the '791 Patent in 2004.  The record remains unclear as to this point, and likely weighs in plaintiffs' favor.  Thus, defendant has not established by clear and

convincing evidence that plaintiff ATC had, with full knowledge of its rights, intentionally waived its right to sue under the '791 Patent.

## CONCLUSION

For the foregoing reasons the court finds: (1) that the claim term "negligibly over a top surface" is not invalid for indefiniteness; and (2) that plaintiffs did not waive their right to sue under the '791 Patent. The parties shall file a proposed judgment within 30 days of the date of this Order.

**SO ORDERED.**
Dated: October 16, 2019
      Brooklyn, New York

                    /s/
                  **HON. KIYO A. MATSUMOTO**
                  United States District Judge
                  Eastern District of New York